H. R., by his father and next friend, H. R., et al., Plaintiffs,

v.

David W. **HORNBECK,** in his official capacity as State Superintendent of Schools, Maryland State Department of Education, et al., Defendants.

Civ. No. HM81–508.

United States District Court,
D. Maryland.

Sept. 24, 1981.

**216**

Eleanor Montgomery, Winifred DePalma, L. Jerry Dresner, Natalie McCeney, of Maryland Advocacy Unit for the Developmentally Disabled, Inc., Baltimore, Md., attorneys for plaintiffs.

Stephen H. Sachs, Atty. Gen. of Maryland, Ellen M. Heller and James Raggio, Asst. Attys. Gen. of Maryland, for defendants David W. Hornbeck and Maryland State Bd. of Ed.

Elise Judge Mason, Chief City Sol., Baltimore, Md., for defendants John Crew and the Bd. of School Commissioners of Baltimore City, of Baltimore, Md.

Thomas J. Wohlgemuth, Annapolis, Md., for defendants Edward J. Anderson and Bd. of Ed. of Anne Arundel County, Md.

Arnold E. Jablon and Jablon & Jablon, Towson, Md., for defendants Robert Y. Dubel and Bd. of Ed. of Baltimore County, Maryland.

Andrew W. Nussbaum, Paul M. Nussbaum and Reichelt, Nussbaum, Brown & Topf, Mount Rainier, Md., for defendants Edward J. Feeney and Bd. of Ed. of Prince George's County, Md.

Charles U. Price, Frederick, Md., for defendants Gordon M. Anderson and Frederick County Bd. of Ed.

George W. Johnston, Bruce P. Martin, Peter Keith and Jeffrey P. Ayres, and Venable, Baetjer & Howard, Baltimore, Md., for defendants Alphonso A. Roberty and Bd. of Ed. of Harford County, Md.

## MEMORANDUM OPINION

HERBERT F. MURRAY, District Judge.

The instant action was instituted by thirteen handicapped schoolchildren residing in Baltimore City, Baltimore County, Anne Arundel County, Frederick County, Prince George's County and Harford County, all in the State of Maryland. The county superintendents of schools and boards of education in each of the above-named counties, as well as the State Superintendent of Schools and the State Board of Education, have been named as defendants. The plaintiff schoolchildren, by their parents and guardians, seek to certify a class composed of all educationally handicapped children in the above-named counties who have been, are now, or in the future may be excluded from educational services by removal from school because of behavior problems which, it is alleged, are related to their handicaps. Plaintiffs base their lawsuit upon several statutory sources: the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* ("EAHC Act"), section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Education Article of the Maryland Annotated Code, § 8–401 *et seq.* ("Education Article"). Additionally, plaintiffs assert denials of due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. Whatever the source of the right sued upon, however, the basic claim is always the same: plaintiffs are attacking the exclusion of handicapped children from educational services under school disciplinary procedures used for *normal* schoolchildren, contending that handicapped children must be retained in their present placement until a qualified panel of special education experts makes a change in placement consistent with the education for handicapped children laws.

The case is presently before the court on defendants' motion to dismiss. The chief contention argued by counsel for defendants is that plaintiffs, prior to bringing this action in federal court, must exhaust the administrative remedies provided by the

State and the counties. The exhaustion doctrine, which is founded upon such principles as "respect for 'administrative autonomy'; a desire that administrative 'expertise and discretion' should first be brought to bear upon specialized problems; and conservation of judicial energies and resources", *Mayor & City Council v. Mathews*, 562 F.2d 914, 920 & n.2 (4th Cir. 1977) (citation omitted), *opinion withdrawn on other grounds*, 571 F.2d 1273 (4th Cir.), *cert. denied*, 493 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 171 (1978), is well settled in the jurisprudence of administrative law. *See McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). In particular, where Congress has enacted a specific scheme for obtaining judicial review which includes a directive to the states to provide effective procedural safeguards to protect the rights provided by statute, a federal court should be circumspect and not exercise its jurisdiction before the contemplated administrative mechanism has had an opportunity to address the alleged deprivation.

The EAHC Act authorized substantial federal monetary grants to the states for the purpose of assisting the state and local educational agencies to improve programs for the education of handicapped children. *See* 20 U.S.C. § 1411. Among the prerequisites to qualifying for this federal financial aid, the state education authorities must establish to the satisfaction of the United States Commissioner of Education that a policy has been established "that assures all handicapped children the right to a free, appropriate public education", 20 U.S.C. § 1412(1), and the local educational agencies or intermediate educational units must "provide satisfactory assurance that [it] will establish and maintain procedural safeguards in accordance with the provisions of [20 U.S.C.] sections 1412(5)(B), 1412(5)(C), and 1415". 20 U.S.C. § 1414(a)(7).

Section 615 of the EAHC Act, codified at 20 U.S.C. § 1415, "was a further strengthening and amendment of Title VI of the Elementary and Secondary Education Act,

Pub.L. 89–750, first enacted in 1966." *Stemple v. Board of Ed. of Prince George's Cty.*, 623 F.2d 893, 896 (4th Cir. 1980). The procedures mandated by § 615 enable parents or guardians to contest decisions made by state or local educational authorities regarding the identification, evaluation and placement of handicapped children. Summarizing the provisions of § 615 of the EAHC Act, Judge Winter's [now Chief Judge] opinion in *Stemple* notes:

> It requires any state, local or intermediate educational agency receiving federal funds to establish and maintain certain minimum procedures. § 615(a). These include: a parent's right of inspection of relevant records, designation of a surrogate for a child's parents or guardian if they are not known, written notice and an opportunity to be heard whenever an agency proposes to initiate or refuses to initiate a change in a child's placement, and a right to an "impartial due process hearing." § 615(b)(1)–(2). The section provides further that, if the required hearing is conducted by a local or intermediate educational agency or unit, a person aggrieved by the decision shall have a right to appeal to the state educational agency, § 615(c) where he shall have the right to be represented by counsel, to present evidence and confront, cross-examine and compel the attendance of witnesses, to receive a record of the hearing, and to receive written findings of fact and decisions. § 615(d). The decision made in a hearing conducted in accordance with the provisions of § 615 is final subject to the right of appeal, and the decision of a local or intermediate unit (where there is no right of appeal) or the decision of a state educational agency may be reviewed in an action instituted in a state court of competent jurisdiction or a district court of the United States without regard to the amount in controversy. § 615(e)(1) and (2).

623 F.2d at 897.

Plaintiffs are not attacking the procedures established by the defendants to qualify for federal funds under the EAHC Act.

Instead, they complain that these procedures are being circumvented by the expulsion and suspension of special education children under the disciplinary procedures intended for normal children. Even after accepting the truth, as must be done on a motion to dismiss, of all the plaintiffs' allegations about circumvention of the proper procedures, it seems to this court that plaintiffs themselves are attempting to bypass the requirements of the federal and state legislative schemes by prematurely bringing suit in federal court.

Indeed, as a jurisdictional matter, the court notes that 20 U.S.C. § 1415(e)(4) grants district courts of the United States jurisdiction only over actions brought by a party aggrieved by a final administrative decision. *See* 20 U.S.C. § 1415(e)(2). Speaking of a similar administrative remedial scheme enacted by the Virginia legislature in compliance with the EAHC Act, the Court of Appeals for this circuit has noted, "It is therefore apparent that both the federal and state statutes contemplate broad judicial review *at the conclusion of the administrative action.*" *Scruggs v. Campbell*, 630 F.2d 237, 238–39 (4th Cir. 1980) (emphasis added).

In a case brought in another district court within this circuit, *Harris v. Campbell*, 472 F.Supp. 51 (E.D.Va.1979), the plaintiff was a seriously emotionally disturbed child who filed suit under the EAHC Act, the Rehabilitation Act, the Fourteenth Amendment, 42 U.S.C. § 1983, and various Virginia state law provisions challenging the alleged failure of state and local education officials to provide him with an appropriate program of education. Like one of the named plaintiffs in the case at bar, Harris alleged that he was at home and not receiving any education at all, appropriate or otherwise. In dismissing all of the plaintiff's federal claims, Judge Merhige held:

> In any event, the issues of whether plaintiff is receiving an appropriate inter-

im education and whether the Norfolk defendants are making good-faith efforts to place plaintiff in appropriate schools, as well as what, if any, steps might prove more effective in placing plaintiff, are matters ". . . relating to . . . the provision of a free appropriate public education . . . ." to plaintiff, 20 U.S.C. § 1415(b)(1)(E), and, as such, must be brought before the local and state agencies prior to review by this Court. These Act requirements represent Congressional recognition of the view expressed by the Supreme Court in another school context that these educational questions lie in an area in which the courts' "lack of specialized knowledge and experience counsels against premature interference with the informed judgments made at the state and local levels." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973).

472 F.Supp. at 55.

The conclusion that exhaustion is required prior to the maintaining of a district court action under the EAHC Act has also been reached by courts in other circuits. *Riley v. Ambach*, 3 EHLR 552:410 (2d Cir., May 19, 1981); *Sessions v. Livingston Parish School Board*, 501 F.Supp. 251 (M.D.La.1980); *Groshong v. Independent School District No. 831*, No. 3–77–376 (D.Minn., Nov. 13, 1980); *Doe v. Anrig*, 500 F.Supp. 802 (D.Mass.1980); *Gargani v. School Committee of the City of Cranston*, No. 77–0612 (D.R.I., May 4, 1978); *Stubbs v. Kline*, 463 F.Supp. 110 (W.D.Pa. 1978).[1] These courts recognize, as does the Congress of the United States, the extreme desirability of a comprehensive administrative process to handle problems associated with educationally handicapped children. As a practical matter, the majority of parents with handicapped children will not be able to afford the excessive costs of pursuing these kinds of problems via litigation.

---

1. Subsequent to the hearing on the motion to dismiss, the parties in this case have written to the court discussing the effect of the recent decision of the First Circuit Court of Appeals in *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 3 EHLR 552:444 (1st Cir. 1981). The decision in that case further supports the contention that a plaintiff under the EAHC must first exhaust his administrative remedies.

Furthermore, it must be said that few other societal problems present such a multitude of difficult policy questions with which the courts, as an institution, are singularly ill-equipped to deal.

Traditionally, an exception has been grafted onto the exhaustion doctrine where pursuit of the administrative mechanism would be futile. Thus, in *Sherry v. New York State Education Dept.*, 479 F.Supp. 1328 (W.D.N.Y.1979), cited by plaintiffs, the hearing offered by the State defendants did not contemplate the appointment of impartial hearing officers as required by the EAHC Act; therefore, the court found, exhaustion would be futile as there was in fact no hearing provided within the meaning of 20 U.S.C. § 1415. Similarly, in *Monahan v. State of Nebraska*, 491 F.Supp. 1074 (D.Neb.1980), also relied on by plaintiffs, the court found that the pursuit of administrative remedies would be a "futile gesture" because the State administrative procedure did not comport with the EAHC Act requirements of an impartial due process hearing. Also, in *New York State Assoc. v. Carey*, 466 F.Supp. 479 (E.D.N.Y.1978), the court found the normal requirement of exhaustion to be futile. In *Carey*, the defendant board of education had ordered certain retarded students to be excluded from the public schools because they were carriers of a hepatitis virus. Under the exigent circumstances presented by that case, the court deemed it "unwarranted to defer to administrative enforcement of the statute as might otherwise be required." *Id.* at 486.

In contrast, plaintiffs' counsel in the case at bar, when asked at oral argument, disclaimed any intention to advance a "futility" contention. While the court has experienced some difficulty reconciling this disclaimer with the plain implications of plaintiffs' arguments, it can but take plaintiffs at their word and concentrate on the arguments as plaintiffs have articulated them. As plaintiffs state in their memorandum in opposition to the motion to dismiss: "The basis of Plaintiffs' EAHC claim is that Defendants have ignored the EAHC Act in removing Plaintiffs from school and have thereby deprived Plaintiffs of the protections of the administrative scheme established by the Act." If this is not to be construed as a futility argument, then it is difficult to see how plaintiffs can prevail on such a contention when they have not given that administrative scheme a chance to vindicate the concerns underlying this lawsuit; in short, it appears that it is the plaintiffs who are depriving *themselves* of the protection of the State's administrative scheme.

In reviewing the arguments made in their papers and during the oral argument, the court finds a somewhat more meritorious contention standing behind this position taken by plaintiffs' counsel. Counsel argue that by excluding a handicapped child under the normal education procedures, rather than maintaining the child in his placement until a panel of special education experts can evaluate the behavior which prompted the suspension or expulsion (as the case might be), defendants are effectively placing the burden upon the handicapped child of raising the question whether his behavior is a manifestation of his handicap. This placing of the burden on the child was held to be a violation of both the EAHC Act and § 504 of the Rehabilitation Act in *S–1 v. Turlington*, 635 F.2d 342 (5th Cir. 1981). Several points need to be made about the *Turlington* decision, however. First, the Fifth Circuit Court of Appeals did not hold that expulsion could never be a proper disciplinary tool for dealing with a handicapped child, but merely held that such a tool be used when proper procedures are utilized and under proper circumstances. Second, the appellate court was reviewing a grant of preliminary relief by the trial court, using as the standard of review whether the issuance of the injunction constituted an abuse of discretion. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). The trial court in *Turlington* had found that the plaintiffs had suffered irreparable harm in that *two years* of education had been irretrievably lost. Defendants in the case at bar are already operating under a stipulation, growing out of interim injunctive relief already granted

by this court, which eliminates from this case the causes for concern which were present before the trial judge in *Turlington* and which were the basis for the ruling reviewed by the Fifth Circuit. The Fifth Circuit did *not* hold that failure to utilize the proper procedures vitiated the entire state administrative mechanism and that there was no longer any requirement to exhaust administrative remedies.

In the case at bar, were plaintiffs to pursue their remedies at the county level and, if necessary, at the state level, the end result might be a quick and inexpensive determination that the procedures complained of were inconsistent with state law, with a policy directive issued from the state board of education to the counties containing instructions on how to deal with such situations in the future. For example, in 1979, a group of parents of handicapped children in Montgomery County (not a defendant herein) complained that certain of them were being charged for the transportation of handicapped children in contravention of the EAHC Act, the Rehabilitation Act and the relevant provisions of the Maryland Education Code. This resulted, after a public hearing on the matter, in the issuance by the state board of education of Resolution 179–36 which affirmed the duty of the county board of education to provide free transportation for each handicapped child in a public or approved nonpublic placement. As a follow-up, later in 1979, the state superintendent issued a directive to all the county superintendents reiterating in substance the contents of Resolution 179–36. Since proceeding before the agencies may result in a speedy resolution of plaintiffs' concerns as regards future recurrences of changes in placement which do not take into account a child's handicap, and as none of the plaintiffs is currently being excluded, plaintiffs' argument, insofar as it is premised on the result in *S–1 v. Turlington*, must be rejected.

Most of the remaining cases cited by plaintiffs involve some exception to the exhaustion requirement not applicable to the case at bar. *Larry P. v. Riles*, 495 F.Supp. 926 (N.D.Cal.1979) was a class action brought on behalf of black children in California who were wrongly placed and maintained in special classes for the "educable mentally retarded" in order to challenge the placement procedures and, in particular, certain uses of standardized intelligence tests. The complaint had initially been filed in November of 1971 alleging only federal constitutional claims. It was not until after the United States moved to participate as *amicus curiae* in August of 1977, arguing that the use of I.Q. test scores to effect the placement of black children into special education classes was in violation of the EAHC Act and the Rehabilitation Act, that the class plaintiffs got the idea to amend their complaint to include claims under those statutes in addition to their constitutional claims. The court in *Larry P.* recognized that exhaustion was normally required but decided that exhaustion would be "meaningless and superfluous" in a case wherein the central issue remained equal protection, as evidenced by the fact that preliminary injunctive relief granted on that basis was still in effect seven years after its entry. The case at bar, in contrast, presents chiefly a claim under the EAHC Act and constitutional claims that are, at best, derivative. Nothing decided in *Larry P.*, therefore, indicates that the exhaustion requirement in the present matter be dispensed with.

The court in *Medley v. Ginsberg*, 492 F.Supp. 1294, 1309 (S.D.W.Va.1980) found that there was not a parent, guardian or surrogate who could have availed himself of the due process procedures promulgated by the Department of Education; requiring exhaustion under those circumstances would serve no useful purpose. No such disability is present in the instant case. Also, cases such as *Doe v. Koger*, 480 F.Supp. 225 (N.D.Ind.1979) and *Armstrong v. Kline*, 476 F.Supp. 583 (E.D.Pa.1979), *remanded sub nom. Battle v. Commonwealth of Pennsylvania*, 629 F.2d 269 (3d Cir. 1980), *cert. denied*, 449 U.S. 1109, 101 S.Ct. 916, 66 L.Ed.2d 837 (1981), do not suggest a contrary result as those were challenges to the validity of the state laws themselves; no

contention is made by plaintiffs herein that the laws established by Maryland do not comport with the requirements of federal law. Finally, *Howard S. v. Friendswood Independent School District*, 454 F.Supp. 634 (S.D.Tex.1978) is no help to plaintiffs herein as the plaintiffs therein, as noted in the court's findings of fact, *id.* at 638, had "taken all reasonable and practicable steps to exhaust administrative remedies...."

■ For all of the foregoing reasons, therefore, plaintiffs' claim under the EAHC Act must be dismissed for failure to exhaust administrative remedies provided by the State of Maryland. For similar reasons, as set forth below, this court concludes that the claims made under the Rehabilitation Act must also be dismissed for failure to exhaust administrative remedies.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides in pertinent part:

No otherwise qualified handicapped individual in the United States, as defined in § 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefit of, or be subjected to discrimination under any program or activity receiving Federal financial assistance under any program or activity conducted by any Executive agency or by the United States postal service.

To effectuate the purpose of this provision, the (then) Department of Health, Education and Welfare promulgated regulations which became effective on June 3, 1977. 45 C.F.R. § 84.36 directs recipients of federal funds who operate educational institutions to implement procedural safeguards relating to identification, evaluation, or educational placements of those believed to need special education services. The regulation goes on to specify, however, that "[c]ompliance with the procedural safeguards of § 615 of the EAHC Act is one means of meeting this requirement." As the gravamen of plaintiffs' claims under the Rehabilitation Act is identical in every respect to that of the EAHC claim, no remedy should be available under the former that is precluded under the latter because of failure to

exhaust the appropriate administrative remedies.

The same conclusion was drawn by the court in *Harris v. Campbell, supra*:

Plaintiff's claims under the Rehabilitation Act of 1973 ... are also premature. The basis of all these claims is substantially the same as that of plaintiff's claim under the Education for All Handicapped Children Act of 1975; all of these claims are founded upon plaintiff's assertion that defendants have discriminated against him by failing to place him in an appropriate educational program at public expense, while providing appropriate public educational programs at public expense to average children.

There is no basis for a claim before this court of discrimination against plaintiff due to his handicap (29 U.S.C. § 794) or for a claim that plaintiff was denied equal protection of the laws, until plaintiff has exhausted his procedural hearing and review remedies under the Education for All Handicapped Children Act of 1975....

472 F.Supp. at 55. Or, as phrased by the Fourth Circuit in *Scruggs v. Campbell, supra*, "The district court correctly recognized that the federal action was premature because the Scruggs had not exhausted their administrative remedies under either the Education for All Handicapped Children Act or the Rehabilitation Act." 630 F.2d at 239. *Accord, Groshong v. Independent School District No. 83, supra. See also Johnson v. Brelje*, 482 F.Supp. 125, 132–33 n.11 (N.D.Ill.1979); *Boxall v. Sequoia Union High School*, 464 F.Supp. 1104, 1111 (N.D. Cal.1979); *Stubbs v. Kline, supra; Sherer v. Waier*, 457 F.Supp. 1039, 1046 (W.D.Mo. 1978); *Doe v. Colautti*, 454 F.Supp. 621, 630 (E.D.Pa.1978), *aff'd*, 592 F.2d 704 (3d Cir. 1979); *Doe v. New York University*, 442 F.Supp. 522 (S.D.N.Y.1978).

■ Plaintiffs in their complaint have also raised claims under the Fourteenth Amendment to the United States Constitution. Nevertheless, this court concludes, as did courts in decisions already cited in this memorandum opinion, that where one seeks

to assert as a constitutional claim the self-same rights which Congress has endeavored to protect through specific statutory schemes which themselves pass constitutional muster, and where such schemes establish an elaborate administrative system for the vindication of those rights, and where, as here, that administrative mechanism concededly satisfies the requirements of due process, then no claim will lie in a federal court until the remedies provided by the administrative process have been exhausted. *See Harris v. Campbell, supra; Sessions v. Livingston Parish School Board, supra.* To rule otherwise would be to render large sections of the EAHC Act nugatory by permitting plaintiffs to end run the procedural prerequisites of that statute by the mere expedient of cloaking their statutory claims in constitutional apparel. There is no indication that whatever claims plaintiffs may seek to advance cannot be accommodated by the administrative mechanism available. This situation thus stands in sharp contrast to the one in *McCray v. Burrell,* 516 F.2d 357 (4th Cir.), *cert. granted,* 423 U.S. 923, 96 S.Ct. 264, 46 L.Ed.2d 249 (1975), *cert. dismissed,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976). *McCray* was a prisoner's rights case in which the defendants sought to compel plaintiff to bring his constitutional claim before an inmate grievance panel at the state institution. The administrative process advocated by defendants in *McCray* was not established by a federal statute and would not have accommodated the claims asserted by the plaintiff in his federal case. Thus the Fourth Circuit's ruling in *McCray* that exhaustion would not be required is easily distinguishable from the case at bar. *See also Strader v. Troy,* 571 F.2d 1263 (4th Cir. 1978). *Cf. Sanders v. McCrady,* 537 F.2d 1199, 1200–1201 (4th Cir. 1976) (due process claim: exhaustion of administrative remedies by army officer before Army Board for Correction of Military Records required, as the agency was a creature of federal statute and the creation of a federal forum to adjudicate constitutional and statutory claims created the necessity for exhaustion of administrative remedies).

Accordingly, plaintiffs' constitutional claims, which are *in pari materia* with their claims under the EAHC Act and the Rehabilitation Act, will also be dismissed for failure to exhaust. This disposition makes it unnecessary for the court to take any position at this time as to the merits of plaintiffs' constitutional contentions.

Finally, there is the claim brought under 42 U.S.C. § 1983. Section 1983, however, provides no substantive rights of its own, but rather is a remedial statute imposing liability upon those who, under color of state law, work a deprivation upon a person's rights, privileges or immunities otherwise granted by the Constitution and laws of the United States. As the Supreme Court recently put it, "[O]ne cannot go into court and claim a violation of § 1983 . . . ." *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). *See also Great American Fed. S. & L. Ass'n v. Novotny,* 442 U.S. 366, 381–82, 99 S.Ct. 2345, 2354, 60 L.Ed.2d 957 (1979) (Stevens, J. concurring).

The *Novotny* case just cited curtails the availability of a § 1983 action to redress rights which are subject to an express administrative remedial mechanism. The Supreme Court in *Novotny* was confronted by a situation in which plaintiff claimed a violation of 42 U.S.C. § 1985(c) caused by an alleged conspiracy to deprive plaintiff of "the equal protection of and equal privileges and immunities under" Title VII. 442 U.S. at 369, 99 S.Ct. at 2347. Of course, Title VII is another Congressional statute which establishes a comprehensive administrative mechanism for the vindication of a particular federal right, namely the right to be free from employment discrimination based on race, sex or national origin. The *Novotny* Court refused to permit what was essentially a Title VII claim to eviscerate the overall Congressional scheme animating employment discrimination suits by the mere expedient of appending a claim under the Civil Rights Act of 1871 to the complaint. In the Court's words, "Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by

holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(c). The reasoning of the Court with respect to § 1985(c) is equally applicable to § 1983. *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). The Supreme Court has, in fact, expressly so held this term. *Middlesex Sewerage Authority v. National Sea Clammers Ass'n,* —— U.S. ——, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (no action will lie under § 1983 to enforce rights claimed under the Federal Water Pollution Control Act of 1972, 33 U.S.C. § 1251 *et seq.,* and the Marine Protection, Research and Sanctuaries Act of 1972, 33 U.S.C. § 1401 *et seq.,* because of the extensive enforcement mechanism available under those statutes).

Recently, the court in *Tatro v. Texas,* 516 F.Supp. 968 (N.D.Tex.1981) analyzed the availability of a § 1983 action predicated on EAHC Act violations and concluded that no cause of action would lie under § 1983 where the EAHC Act's administrative mechanism had not been exhausted. The court reasoned:

> It is illogical to conclude that Congress created an elaborate administrative review mechanism at local and State levels, yet, simultaneously, envisioned that anyone wishing to do so, could proceed directly to federal court. While the federal courts are given an important role by the EAHCA, it is not an open-ended responsibility. Their role is limited in two material ways. First, the federal judicial review is not available until after at least two levels of State administrative review have failed to adjust the dispute. Second, under this scheme, even if the dispute is not resolved at the administrative level, the reviewing court will have before it a fully developed administrative record, presumably reflecting the nuances of the decisions of the school and the parents. Section 1983, however, has no such constraints. Moreover, like Title VII, judicial decisions have limited the type of damages recoverable under the EAHCA. For example, there is no recovery of private tuition expenses for children withdrawn from school before completion of the review procedures. *See Stemple v. Board of Education, supra.* Recognizing a right of action under § 1983 for rights "secured" by the EAHCA would open the door to a range of damages unavailable under the EAHCA, and thereby undermine the entire analytical focus of granting relief as appropriate under the EAHCA.

*Id.* at 983. Accordingly, the plaintiffs' claim under § 1983 will be dismissed as well.

Of course, plaintiffs' state law claims under the Maryland Education Code should also be presented before the administrative tribunal, but in any event this court will not exercise jurisdiction over a pendent state claim when all the federal claims have been eliminated from the case.

For all of the foregoing reasons, plaintiffs' complaint will be dismissed. The court will enter an appropriate order.