John DOE, Jr., Plaintiff,

v.

ROCKINGHAM COUNTY SCHOOL BOARD and Ryland Dishner, Superintendent Rockingham County Schools, Defendants.

Civ. A. No. 86–0009–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 16, 1987.

Grant A. Richardson, Dana J. Cornett, Bridgewater, Va., for plaintiff.

Phillip C. Stone, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This action was brought on behalf of a learning disabled child by his parent, seeking the child's readmission into school during the pendency of a 29-day suspension from school for disciplinary problems. Included was a claim for attorney's fees. Although jurisdiction is an issue in the case which will be addressed herein, this action was brought under 42 U.S.C. § 1983 (1982), 42 U.S.C. § 1988 (1982), 28 U.S.C. § 1343(3-4) (1982), and pursuant to the Education for All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. § 1401-1461, 1415(b)(2), (c), (e)(2)-(3) (1982).

At the time of the complaint John Doe, Jr. was an eight year old child in the third grade at Bridgewater Elementary School, Bridgewater, Rockingham County, Virginia. Affidavits before the court indicate that John, Jr. had long been a disciplinary problem and had been involved in a series of incidents which were both disruptive and somewhat violent. Problems with the child's deportment had caused school officials to consider a transfer to Pleasant Valley School in December, 1985, but John, Jr. remained at Bridgewater Elementary School until the occurrence of the incidents at issue herein.

While the child's actions were not life-threatening, and his stature was small enough to permit him to be physically restrained, he periodically, and immediately prior to his suspension, engaged in verbal and physical temper tantrums which included kicking and scratching teachers and hitting other students. Of course, the exact level of the child's violence is a matter of some dispute. After a particularly severe incident on January 9, 1986, John, Jr. was suspended for 35 days from school, from January 10, 1986, until the next School Board meeting on February 13, 1986. The plaintiff's mother called Mr. Dishner, the Rockingham County School Superintendent, after which John, Jr. was returned to school on January 13, 1986. However, the boy was again suspended after another disruptive incident on January 15, 1986. The defendant School Board and other school officials refused to grant plaintiff a hearing on the matter until the next School Board meeting, to be held on February 13, 1986.

On January 20, 1986, Dr. Barry Hensley, a licensed psychologist, examined John, Jr. and determined that the child suffered from a learning disability. On January 29, 1986, the plaintiff's parents and Dr. Hensley met with Charles Pellman, principal of Bridgewater Elementary School, Barbara LeFever, the school's psychologist, and Mrs. Rupert, the plaintiff's teacher. At this time the school officials were informed of Dr. Hensley's diagnosis, and, after some further discussions, it was arranged that Mrs. LeFever would test John, Jr. for learning disabilities beginning February 3, 1986. After being told of Dr. Hensley's diagnosis, Mr. Pellman refused to reinstate John, Jr. At a second meeting on January 30, 1986, attended by Mr. and Mrs. Doe, Mr. Hensley, Ms. LeFever, Mrs. Rupert, and Mr. Dishner, Dr. Hensley again urged that John, Jr. be reinstated and given counseling and treatment. The affidavits of Mr. Dishner and Mrs. LeFever state that the parents were told to consider homebound instruction, and that they did not respond to this suggestion. The parents dispute this, saying that no educational services were offered at either of these two meetings. The affidavit of Dr. Hensley is silent on this point. In reviewing the record for a motion for summary judgment in favor of the plaintiff, this court will assume that homebound instruction was orally offered.

While there is some dispute among the parties as to whether the plaintiff was offered homebound instruction at the January 29, 1986, meeting, it is undisputed that

school officials refused to consider lifting the suspension until February 13, 1986.

On February 4, 1986, the plaintiff filed the instant cause of action seeking a temporary restraining order to force John, Jr.'s readmission to school and to order further procedural due process. At a hearing on February 6, 1986, this court granted plaintiff's motion, to the extent that defendants were restrained from failing to provide John Doe, Jr. with an appropriate educational program to be determined by the defendants. *See Order*, entered February 18, 1986. John, Jr. was reinstated at Pleasant Valley Elementary School on February 18, 1986, pursuant to a decision of the Individualized Education Program Committee. Although the child has subsequently been placed in a homebound instruction program pending development of an individualized education program, all parties are apparently in agreement that the defendants are currently devising a satisfactory educational program.

The defendants have filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Since both parties have relied upon affidavits and other matters outside the pleadings, these motions shall be treated as motions for summary judgment pursuant to Fed.R.Civ.P. 56. Although the plaintiff has not filed a cross-motion for summary judgment, the court in this case may grant judgment for either party if undisputed facts show the prevailing party to be entitled to judgment as a matter of law. *See, e.g., Marshall v. Sunshine and Leisure, Inc.*, 496 F.Supp. 354 (M.D.Fla.1980); *Doe v. U.S. Civil Service Commission*, 483 F.Supp. 539 (S.D.N.Y. 1980); *Spitz v. U.S.*, 432 F.Supp. 148 (E.D. Wis.1977); *Plouse v. Richardson*, 334 F.Supp. 1086 (W.D.Pa.1971).

## I. *Jurisdiction*

### A. *Jurisdiction Pursuant to 42 U.S.C. § 1983 (1982)*

The Education for All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. § 1401–1461 (1982) provides a specific scheme for obtaining due process and judicial review, under which the Commonwealth of Virginia has promulgated administrative remedies complete with procedural safeguards, Va.Code § 22.1–214 (1985). Section 1415(e)(2) of the EAHCA explicitly provides a right in a party aggrieved by a final administrative decision to bring a civil action in a district court of the United States. However, as defendants note, clearly established law requires the plaintiff to exhaust his administrative remedies prior to bringing a civil action. *McGovern v. Sullins*, 676 F.2d 98, 99 (4th Cir.1982); *Scruggs v. Campbell*, 630 F.2d 237, 239 (4th Cir.1980).

In response, plaintiff has cited an equally familiar and well-established doctrine, namely that district courts have "authority under § 1415(e)(2) to grant 'appropriate relief' as including the authority to grant injunctive relief … prior to exhaustion of the state remedies if pursuing those remedies would be futile or inadequate.… Under either the EHA [EAHCA] or § 1983, a plaintiff would be entitled to bypass the administrative process by obtaining injunctive relief only on a showing that irreparable harm otherwise would result.…" *Smith v. Robinson*, 468 U.S. 992, 1014 n. 17, 104 S.Ct. 3457, 3469 n. 17, 82 L.Ed.2d 746 (1984).

Plaintiff argues that leaving John, Jr. under disciplinary suspension for 29 days with no educational services whatsoever constitutes an irreparable detriment to the child. Defendants reply that plaintiff failed to take advantage of the administrative remedies that were to begin on February 13, 1986, and that John, Jr. should have remained in his then current educational placement, even if that placement was in school under disciplinary suspension. Further, defendants argue that a suspension of this length of time is not material. Thus, it is clear that in order to decide the jurisdictional issues of this case, a complete investigation into the merits is required.

The facts of this case require that the issues be discussed in a bifurcated manner.

First, the plaintiff's due process rights must be considered regarding the plaintiff as a normal child facing a 29–day disciplinary suspension, since school officials did not initially perceive that the plaintiff was handicapped. Second, once school officials were notified of John Jr.'s learning disability, the plaintiff's due process rights as a handicapped child must be reconsidered in light of the EAHCA.

In both cases, the plaintiff has due process rights, since *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), indicates that a disciplinary suspension for even a normal child creates more than a *de minimis* liberty interest for a school child. Under *Goss*, the plaintiff would be entitled to notice and at least an informal hearing at which he could give his version of the events. *See Goss, supra*, at 582–84, 95 S.Ct. at 740–41. For even a 10–day suspension, the court stated that in certain cases the school official "may then determine himself to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he may permit counsel." *Id.* at 584, 95 S.Ct. at 741. The Supreme Court also notes that longer suspensions "may require more formal procedures." *Id.* In this case, the parents of John, Jr. clearly had ample notice of the reasons for the suspension from school officials. When the plaintiff's father picked John, Jr. up from school on January 15, 1986, he spoke with Mr. Dishner. Mr. Doe was told that "John, Jr. was suspended from school until February 13 at which time the School Board would meet to consider the child's return to school." Complaint at p. 4. It then becomes necessary to decide whether this brief meeting constituted a due process hearing, whether the plaintiff was under a duty to request further due process, and whether the school was under an obligation to furnish the plaintiff with information regarding what further due process remedies were available, in order to decide whether the plaintiff has exhausted his administrative remedies.

It is clear that when a student's conduct disrupts the academic atmosphere of the school and endangers fellow students, teachers, or school officials, or damages property, the Supreme Court opinion in *Goss*, at 572, 95 S.Ct. at 735, requires that notice of suspension proceedings be sent to the student's parents and that a hearing be held, with the student present, "as soon as practicable." *Id.* at 583, 95 S.Ct. at 740–41. In *Goss*, the Supreme Court affirmed a district court opinion which specified that notice should be usually given within 24 hours and that a hearing should be held within 72 hours. Clearly *Goss* did not contemplate that a due process hearing 29 days later would be adequate.

As the court in *Goss* states:

We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

*Id.* at 581, 95 S.Ct. at 739–40 (footnote omitted). Furthermore, under due process considerations, failure on the part of school authorities to afford a hearing is not excused by later proof that the student is guilty of the offense charged. *See* 68 Am. Jur.2d 597, *Schools* § 272 (1973 & Supp. July, 1986). Thus, the necessity of a prompt hearing is a constitutional prerequisite despite the fact that Virginia's statutory law appears to allow suspensions to remain in effect for a period of up to 30 days pending decision by a school board.[1]

---

1. The statutory law of the Commonwealth of Virginia apparently does not contemplate a

hearing within 72 hours, and could in fact be read to mean that suspensions could continue

Although the complaint indicates that Mr. Dishner talked to John, Sr. on January 15, 1986, as Mr. Doe was picking John, Jr. up, it has not been contended by defendants that this brief encounter constituted a hearing for due process purposes. Thus, applying the standard of *Goss,* the plaintiff's right to a due process hearing has been violated. A look at the district court opinion which was affirmed in the *Goss* case, *Lopez v. Williams,* 372 F.Supp. 1279, 1302 (S.D.Ohio 1973), shows a finding that the students' interests had been violated due to lack of notice and an opportunity for a hearing, even though the letters sent to the students' parents in that case urged that the parents attend a conference at the school. And, as in the *Lopez* case, there is no evidence that the plaintiff voluntarily relinquished his right to a hearing. For these reasons, it is the decision of this court that the defendants were under a duty to provide a hearing within a reasonable period of time after the date of the suspension, which would not normally exceed 72 hours. This was concededly not done in John, Jr.'s case. Thus, the complaint states a cause of action permitting this court to accept jurisdiction under 42 U.S.C. § 1983 (1982). Under the circumstances, plaintiff would have been irreparably harmed, under the *Goss* analysis, had he waited until February 13, 1986, for the defendants to provide their proposed administrative remedy.

### B. *Jurisdiction Pursuant to 20 U.S.C. § 1415*

Defendants have also alleged that this court does not have jurisdiction to hear the plaintiff's claims under the Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401–1461 (1982). However, *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), indicates that the futility doctrine is equally applicable to claims under section 1983 and claims under the EAHCA. Defendants assert that since the provisions of the EAHCA have been met, specifically section 1415(e)(3), a futility argument was an improper basis for jurisdiction. In doing so, the defendants are relying upon the "stay-put" doctrine of the EAHCA. The "stay-put" rule provides that the child shall remain in his current educational placement "[d]uring the pendency of any proceedings conducted pursuant to this section." 20 U.S.C. § 1415(e)(3). Defendants argue that during the pendency of EAHCA proceedings the plaintiff should stay in his then current educational placement, i.e., enrolled in school but under suspension. Under this interpretation of the Act, since the administrative procedures were being followed, plaintiff cannot argue that he has exhausted his administrative remedies.

Other federal courts which have looked at this question are uniform in holding that although suspension may be a proper disciplinary tool under the EAHCA when proper procedures are utilized, complete cessation of educational services during the expulsion period is improper. *S–1 v. Turlington,* 635 F.2d 342 (5th Cir.1981), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Stuart v. Nappi,* 443 F.Supp. 1235 (D.Conn.1978).

In *Turlington,* several handicapped students had been expelled for various acts of misconduct. The Fifth Circuit held that a handicapped student may not be expelled for misconduct which is a manifestation of the handicap itself, and further noted that

during the pendency of committee hearing and an appeal to the full school board for a period not to exceed 30 days after the committee hearing. The applicable Code section reads as follows:

B....

A pupil may be suspended from attendance at school for more than ten days after providing written notice to the pupil and his parent(s) or guardian of the proposed action and the reasons therefor and of the right to a hearing before the school board or a committee thereof or, if permitted by the regulations of the school board, the superintendent or his designee(s). If the regulations provide for a hearing by a committee of the school board or by the superintendent or his designee(s), the regulations shall also provide for an appeal of the decision to the full school board, which appeal, if requested, shall be decided by the school board within thirty days. Va.Code § 22.1–277 (1985).

orthopedically handicapped children who may act aggressively as a result of their handicap may also be determined to have been expelled for misconduct which is a manifestation of their handicap. Furthermore, the court in *Turlington* held that in light of the remedial purposes of the EAH-CA, the burden is on local and state defendants to determine whether a student's misconduct is a manifestation of the student's handicap. This finding was in part based upon the fact that, in most cases, handicapped students and their parents lack the wherewithal either to know of or to assert their rights under the EAHCA.

A very thorough review of the intent of Congress as evidenced in the EAHCA and other federal regulations can be found in the *Stuart* decision. The court notes that "[a]n important feature of the Handicapped Act is its requirement is that children be educated in the 'least restrictive environment.' This requirement entitles handicapped children to be educated with non-handicapped children whenever possible." *Stuart, supra,* at 1242. The court also notes that:

> The expulsion of handicapped children not only jeopardizes their right to an education in the least restrictive environment, but is inconsistent with the procedures established by the Handicapped Act for changing the placement of disruptive children. The Handicapped Act prescribes a procedure whereby disruptive children are transferred to more restrictive placements when their behavior significantly impairs the education of other children. *See* 42 Fed.Reg. 42,473, 42,497 (1977) (to be codified in 45 C.F.R. § 121a.552).... Thus, the use of expulsion proceedings as a means of changing the placement of a disruptive handicapped child contravenes the procedures of the Handicapped Act.

*Stuart, supra,* at 1243 (footnote omitted).

Defendants rely on *H.R. v. Hornbeck,* 524 F.Supp. 215 (D.Md.1981), in which the district court required handicapped children to exhaust administrative remedies before bringing an action in federal court. However, that case is distinguishable in two very important respects. First, the district court specifically noted that it was not deciding a case in which futility had been asserted.

In *Hornbeck,* the plaintiffs complained that the procedures required by the EAH-CA were being "circumvented by the expulsion and suspension of special education children under the disciplinary procedures intended for normal children." *Id.* at 218. After reviewing a number of cases requiring exhaustion of administrative remedies, the court noted that an exception has traditionally been created where pursuit of such remedies would be futile. However, since the plaintiff's counsel had "disclaimed any intention to advance a 'futility' contention," and the court feeling reluctantly bound to decide the issues as brought before it, all cases dealing with that exception were ignored. *Id.* at 219. Since the plaintiff herein *has* argued futility, the reasoning in *Hornbeck* cannot be utilized.

Second, the court in *Hornbeck* specifically noted that, despite the fact that the complaint alleged a class of plaintiffs who "have been, are now, or in the future may be excluded from educational services," *id.* at 216, no plaintiffs before the court were currently being excluded, *id.* at 220. On that basis the plaintiffs' reliance on *Turlington* was rejected. In the case at bar, John, Jr. was being excluded from any educational services when the complaint was filed, and thus *Turlington,* not *Hornbeck,* is applicable. Furthermore, the court in *Hornbeck* did not reject the reasoning of *Turlington.*

While the cases on point are not plentiful, this court joins the opinions of the courts in *Turlington* and *Stuart* and holds that leaving a handicapped child under disciplinary suspension during the pendency of administrative proceedings violated both the legislative language and intent of the "stay-put" rule found in section 1415(e)(3). While a continuing disciplinary suspension may be proper in another case, the defendants in the case at bar have not even attempted to demonstrate that the suspension of John, Jr. was of educational benefit to him, nor did they engage in any

of the formal procedures mandated by the EAHCA to apprise the plaintiff of his rights under the Act. Having learned of his possible disability, the defendants' refusal to reinstate John Doe, Jr. triggered the full procedural remedies of the EAHCA, including written notice as required by section 1415(b)(1)(C). Even if, as defendants assert, an oral offer of homebound instruction was made, this does not constitute compliance with the provisions of the EAHCA. Therefore, federal question jurisdiction under the Act was proper, since the offered administrative remedies did not comply with the Act and further pursuit of such remedies would not have resulted in the reinstatement the plaintiff sought. For these reasons, the complaint states a cause of action permitting the court to accept jurisdiction under 20 U.S.C. § 1415(e)(4) (1982).

### C. Abstention

Defendants have also argued that the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), precludes subject matter jurisdiction in this court pending state administrative proceedings. However, the abstention doctrine of *Younger* and its progeny does not apply because this case was properly filed under federal statutes. Plaintiff's cause of action for due process violations of deprivation of education under color of law is properly remedied by bringing a section 1983 action, assuming the exhaustion doctrine discussed *infra* does not apply. Further, section 1983 suits are expressly authorized exceptions to the federal anti-injunction statute, 28 U.S.C. § 2283 (1982). *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Gibson v. Berryhill*, 411 U.S. 564, 573, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973). Finally, *Younger* may not be applied, since the defendants admit that no administrative proceedings had commenced at the date of the filing of the complaint. *See* Memorandum In Support of Defendants' Motion to Dismiss at p. 5, filed March 18, 1986. The doctrine calls upon federal courts to abstain from taking jurisdiction of a matter in the face of ongoing, manda-tory state and local proceedings. Since such was not the case here, defendants' reliance on *Younger* is misplaced.

### II. Summary Judgment

As noted above, a complete review of the merits of this case was necessary to determine the jurisdictional questions raised by defendants. As indicated in that review, defendants did not grant to the plaintiff the proper due process remedies available to him under *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), even assuming that John, Jr. was not known to be handicapped. Likewise, once John, Jr.'s handicapped condition was known, the requirements of the Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401–1461 (1982), were not met. For these reasons, it is the decision of this court not only that jurisdiction was proper, but also that summary judgment should be granted in favor of the plaintiff.

Both parties having agreed that those facts which are dispositive of the case are not in dispute, summary judgment is appropriate at this time even though the plaintiff has not cross-moved. *See, e.g., Brandon v. Board of Education of Guilderland Central School Dist.*, 487 F.Supp. 1219 (N.D.N.Y.1980), *aff'd*, 635 F.2d 971 (1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981), *reh'g denied*, 455 U.S. 983, 102 S.Ct. 1493, 71 L.Ed.2d 694 (1982); *Ruby v. American Airlines, Inc.*, 227 F.Supp. 702 (S.D.N.Y. 1963), *aff'd*, 323 F.2d 248 (1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1963). Since the plaintiff's civil rights were abridged, he is entitled to relief under 42 U.S.C. § 1983 (1982). However, as all parties are in agreement that defendants are currently devising a satisfactory educational program, and administrative procedures under the EAHCA have begun, it is the opinion of this court that the further measures of relief requested in the complaint have now become moot. Likewise, since the Act precludes judicial intervention during the pendency of administrative proceedings which are in compliance with the terms of the Act, this court declines to

retain jurisdiction of this matter during any future administrative proceedings.

### III. *Attorney's Fees*

 As defendants correctly point out, the Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1401–1461 (1982), does not allow for an award of attorney's fees. However, as the United States Supreme Court has noted:

> unlike an independent equal protection claim, maintenance of an independent due process challenge to state procedures would not be inconsistent with the EHA's comprehensive scheme. Under either the EHA or § 1983, a plaintiff would be entitled to bypass the administrative process by obtaining injunctive relief only on a showing that irreparable harm otherwise would result.... [T]here is no indication that [state and local] agencies should be exempt from a fee award where plaintiffs have had to resort to judicial relief to force the agencies to provide them the due process they were constitutionally due.

*Smith v. Robinson,* 468 U.S. 992, 1014, n. 17, 104 S.Ct. 3457, 3470 n. 17, 82 L.Ed.2d 746 (1984).

Although this precise issue was not before the Court in *Smith,* the Fourth Circuit Court of Appeals has held that although section 1983 should not be available where administrative remedies can be had under the EAHCA, judicial relief may be appropriate if material and irreparable harm would result from a delay in the initiation of administrative proceedings. *Hymes v. Harnett County Board of Education.,* 664 F.2d 410 (4th Cir.1981). As noted in *Hymes,* while Congress intended the administrative procedures of the EAHCA to be exclusive, in a case in which EAHCA procedures are denied altogether handicapped plaintiffs are entitled to judicial relief under section 1983. *Id.* at 413. Therefore, it is the decision of this court that the plaintiff is entitled to an award of attorney's fees and costs in this matter.

### IV. *Conclusion*

For the above stated reasons, it is the decision of this court that the plaintiff is entitled to summary judgment in his favor, and to an award of reasonable attorney's fees. An appropriate Order shall this day issue.