Holbrook BRADLEY et al., Plaintiffs,

v.

Cyrus R. VANCE, Secretary of State, et al., Defendants.

Civ. A. No. 76–0085.

United States District Court, District of Columbia.

June 28, 1977.

Zona F. Hostetler, Washington, D. C., for plaintiffs.

John R. Dugan, Washington, D. C., for defendants.

Before ROBB, Circuit Judge, and GESELL and FLANNERY, District Judges.

## MEMORANDUM

PER CURIAM.

■ This case presents the question whether statutorily required retirement at age sixty for those persons covered by the Foreign Service Retirement System ("Foreign Service personnel") violates the equal protection guarantees embodied in the Fifth Amendment.[1] Plaintiffs are Foreign Service Officers who were or will be forced into retirement at age sixty and an organization whose membership includes such officers. They seek declaratory and injunctive relief. This matter comes before the Court on defendants' motion to dismiss[2] or for summary judgment and plaintiffs' opposition thereto. At oral argument plaintiff cross-moved for summary judgment, but indicated that defendants could not prevail without supplementing the record. Defendants indicated a willingness for the case to be decided on the existing record. Following oral argument the parties were given an opportunity to submit additional evidence, and both sides did so.

■ Section 632 of the Foreign Service Act of 1946, as amended, 22 U.S.C. § 1002, mandates retirement at age sixty for certain employees of the State Department, the United States Information Agency ("USIA"), and the Agency for International Development ("AID").[3] Generally, employees of the Federal Government need not retire at such an early age. Those employees covered by the Civil Service ("Civil Service personnel") do not face mandatory retirement until age seventy. 5 U.S.C. § 8335. Plaintiffs claim that Congress has drawn an unlawful distinction by setting a lower retirement age for Foreign Service personnel than for Civil Service personnel.[4]

1. Plaintiffs originally had other claims which were presented to a single District Judge. The first, a contention that the mandatory retirement age violated the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Executive Order 11141, 3 C.F.R. § 179, and Civil Service regulations, was dismissed on defendants' motion. 418 F.Supp. 64 (1976). A related claim was dismissed by Court Order on July 27, 1976, and a claim of discrimination in the application of the retirement age was dismissed by Stipulation of counsel on October 14, 1976.

2. Defendants initially argued that the Fifth Amendment does not apply because plaintiffs have no property interest and because they cannot challenge a portion of a statute under which they have received substantial benefits. These contentions have no merit.

3. Any "participant" in the Foreign Service Retirement and Disability System, who is not a career ambassador or a chief of mission, must retire at age sixty unless the Secretary makes a special determination to waive retirement for five years. See 22 U.S.C. § 1002. Those "participants" are:
   (1) Foreign Service Officers; (2) Foreign Service Reserve Officers with unlimited tenure (whether serving in State Department or USIA); (3) Foreign Service Information Officers; (4) Foreign Service Staff officers and employees with unlimited appointments (whether serving in State Department or USIA); and (5) Personnel serving in AID who have unlimited Foreign Service Reserve or Staff appointments or who are serving under Presidential appointment and meet certain other qualifications.

4. This claim raises an issue about the lawfulness of forced retirement between the ages of sixty and seventy, i. e., the difference between the Civil Service and the Foreign Service. Plaintiffs also claim section 632 discriminates between those who have reached age sixty and those who are younger. This second claim raises an additional issue about the lawfulness of forced retirement at age seventy and above. Defendants have offered affidavit testimony that Foreign Service personnel are incapable of working effectively over age sixty. Plaintiffs have not sufficiently rebutted this testimony as to those persons age seventy and above to raise an issue of material fact. Thus defendants are entitled to summary judgment as to the second claim.

Since neither "fundamental" rights nor "suspect" classes are involved here, the distinction between Civil Service and Foreign Service employees is proper if there is a rational basis to support it. *San Antonio Ind. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Thus the simple issue presented here is whether the conditions of Foreign Service work are sufficiently different from the conditions of Civil Service work so that the earlier retirement age is rational. *Cf. Murgia, supra* at n. 8. The application of the "rational basis standard" does not require, though, judicial abdication. It simply means that the legislatively drawn distinction is presumptively valid, and that its challengers have a heavy burden in proving its invalidity. On the record established in this case, the early mandatory retirement age for Foreign Service personnel cannot survive even this most minimal scrutiny.

The Government presents two explanations for the retirement age distinction. It first says that the mandatory retirement age is rationally related to its interest in creating advancement opportunities for younger people. However, an interest in recruiting and promoting younger people solely because of their youth is inherently discriminatory and cannot provide a legitimate basis for the statutory scheme. Furthermore, there is no obvious reason why such a rationale would not equally apply to the Civil Service, and defendants have presented none.

The second rationale is that Foreign Service personnel, unlike Civil Service personnel, tend to work overseas and they face, therefore, unusual physical and psychological difficulties. Sixty year olds are said not to have the vitality necessary to carry out overseas assignments, particularly in "hardship posts," due to the inherent effects of ageing and the cumulative effects of a career spent in foreign lands. Furthermore, the Government contends that upon reaching age sixty people are more likely to need medical attention, which is often lacking in foreign posts.

The record compiled in this case conclusively establishes that Civil Service and other Government personnel work overseas in positions and locations comparable to those of Foreign Service personnel, without facing forced retirement at age 60. In 1976 there were over 58,000 American civilians working for the Government overseas. More than 38,000 were stationed in foreign countries, and about 20,000 were in the United States Trust Territories (e. g., Panama, Samoa, Wake Island).[5] Only 4,787 of these Government employees faced mandatory retirement at age sixty. Thus, less than ten percent of the American civilians who work overseas for the Government are forced to retire at age sixty.[6]

Not only are there substantial numbers of Americans working abroad not subject to early retirement; many of these people have jobs similar to those of Foreign Service personnel. The Foreign Service organizations (State Department, USIA, AID) had 7,792 American civilian employees working abroad in November, 1976. However, many of these employees have Civil Service status and the right to work until age seventy. In fact, almost forty percent of the Americans who work overseas for the Foreign Service agencies are subject to Civil Service retirement. In addition, AID often has its work performed on a contract basis by employees of other departments or agencies such as the Department of Agriculture and the Corps of Engineers. These employees, of course, may work until seven-

---

5. The Government has contended that it is the difficulty of living and working abroad that makes Foreign Service work distinctive. Any such difficulty should be equally present in the Trust Territories which, like foreign countries, may be considered "hardship posts" for Government employees. *See* 5 U.S.C. § 5941. Thus, it seems appropriate for comparison purposes to consider employees working in Trust Territories in the same category as those working in foreign countries.

6. If those people working in Trust Territories are excluded from the calculation, the percentage of those facing early retirement only rises to above twelve and one-half percent.

ty. AID also contracts with private United States organizations to carry out much of its actual technical work. Employees of these organizations are not required to retire at age sixty and quite commonly serve above that age. Nor is it true that Foreign Service personnel are unique in having to handle assignments to unusually difficult posts or "hardship" posts. Peace Corps volunteers (and AID contract personnel) are stationed almost exclusively in underdeveloped areas of the world. Furthermore, unlike Foreign Service personnel, they often live among the poorest segments of the local populace and face any adverse conditions that may exist. These assignments are obviously as taxing and strenuous as Foreign Service assignments. Yet, there is no upper age limit at all for Peace Corps volunteers. Affidavits indicate that many Peace Corps volunteers are, in fact, over age sixty, and that there has been no noticeable problem with medical services. Finally, it is clear that Civil Service personnel also work in "hardship posts".[7] Thus plaintiffs have convincingly shown that reaching age sixty is itself no bar to Government employment overseas. The vast majority of Americans working abroad for the Government do not face early retirement, although their work may be similar in all relevant respects to that performed by Foreign Service personnel.

There remains, though, the Government contention that Foreign Service personnel are unique in that they spend significant portions of their careers abroad, and that this has a cumulative impact so that by age sixty they are generally incapable of effective service. In essence the Government says that while non-Foreign Service personnel serve abroad, they do not follow careers overseas. Plaintiffs, through discovery, attempted to compile a statistical comparison of time spent abroad by Foreign Service personnel and by other Government employees. Defendants were unable to provide this data because of the nature of their recordkeeping systems. Thus plaintiffs have submitted the first ten pages of the State Department's *Biographic Register*[8] for June, 1974 (the last date for which it is available) and an attached explanatory exhibit. Of the twenty-five Foreign Service Officers listed in these ten pages who were over age fifty, the average length of time spent overseas was fifteen years and the average length of time spent in the Service in the United States was ten years. As a comparison plaintiffs have also submitted pages from the *Biographic Register* containing the names of thirteen Civil Service employees of the Agriculture Department's Foreign Service who are over age fifty and an attached explanatory exhibit. The average length of time spent overseas by these Civil Service employees was 11.2 years and an average of eight years was spent in the Service in the United States. The Court does not find this difference in time spent overseas significant. Several other exhibits also indicate that there are many Americans in the Civil Service pursuing careers overseas in the same way that Foreign Service personnel do.

■ The Government has made no attempt to counter the above showing. It merely maintains that since at any given time a far higher proportion of Foreign Service personnel are serving overseas than are Civil Service personnel, the system is rational. It is, of course, true that a statute is not unlawful merely because it creates an imperfect classification. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). If only a small number of personnel working overseas escaped the sixty-year age limit, the Government's point would be well taken. However, we are faced with a situation where tens of thousands of Americans are working for the United States Government overseas and only a tiny percentage are singled out for early retirement. Yet this small group does not appear to serve under any more difficult conditions than the others, nor do they

---

7. The record does not allow a comparison between the number of Civil Service and Foreign Service personnel serving in "hardship posts."

8. "The *Biographic Register* provides concise biographic information on personnel of Department of State and other Federal Government agencies in the field of foreign affairs." *Biographic Register* July, 1971, p. II.

seem to serve for a significantly longer period of time. This system is patently arbitrary and irrational.[9] Thus plaintiffs' motion for summary judgment is granted and the mandatory retirement provision of section 632 of the Foreign Service Act is hereby declared unconstitutional and void. Participants in the Foreign Service retirement and disability system cannot be subject to automatic retirement until age seventy. Of course, Congress is not foreclosed from redrawing the statutory scheme to eliminate the arbitrary classifications now existing and imposing any rational mandatory retirement age. This decision does not affect those provisions of the Foreign Service Act which set forth retirement benefits or alternative means of retirement, whether voluntary or involuntary.

The claims of the individual plaintiffs for back pay and reinstatement must be reviewed. Counsel are directed to confer in light of this opinion and submit an appropriate form of order within two weeks resolving the claims for back pay and reinstatement.

Each party shall bear its own costs and fees.

---

9. The Government's contention that it need not make everyone in the Civil Service retire at age sixty because of those relatively few civil servants who serve abroad is *non sequitur*. The issue is whether the mandatory retirement age imposed on Foreign Service personnel can be deemed rational in light of the situation of other Americans who are working abroad.