James E. ZOMBRO, Plaintiff–Appellant,

v.

BALTIMORE CITY POLICE DEPART-MENT; Bishop L. Robinson, Commissioner, Baltimore City Police Department, Defendants–Appellees.

No. 86–2659.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1988.

Decided March 3, 1989.

Rehearing In Banc Denied April 20, 1989.

and the Fourteenth Amendment to the United States Constitution. Plaintiff James Zombro, a member of the Baltimore City Police Department, contends that he was unlawfully transferred from one department to another because of his age. He seeks compensatory damages and reassignment to his former post with the Inner Harbor Tactical Division. The district court granted summary judgment in favor of defendants Police Commissioner and Police Department. We affirm, but for reasons different from those expressed by the district court.

## I.

Plaintiff James Zombro was employed as an officer with the Baltimore City Police Department, and worked with the Inner Harbor Tactical Division. In early March 1986, the Inner Harbor Unit Supervisor, Lt. Johnson, informed Zombro that he was going to be transferred out of the Unit. Johnson contends that he based the transfer on Zombro's purported poor attitude, particularly his "harsh demeanor" with Inner Harbor visitors and merchants. Zombro asserts that Johnson "advised the Plaintiff that he had been in his current assignment to the Tactical Division, Inner Harbor, too long and that he should not assume he could not be transferred. Lt. Johnson further indicated," according to Zombro's Complaint, "that certain officers, including the Plaintiff, may be transferred because of their age." Plaintiff Zombro also alleged that he did not request a transfer from Inner Harbor to a "job of lesser status." Zombro was transferred to the Northeast Section on March 31, 1986, at the same pay as when he was with the Inner Harbor Tactical Division.

Zombro was forty-five years of age when this action was commenced. He claims he was subjected to unlawful age-based discrimination and that he is entitled to relief under 42 U.S.C. §§ 1983 and 1985 (1982). The § 1985 action is based upon an alleged conspiracy between the Police Commissioner Robinson and the "Baltimore City Police Department." Zombro also claims that the Police Commissioner and the Department

Michael Marshall (Herbert R. Weiner, Schlachman, Potler, Belsky & Weiner, P.A., Baltimore, Md., on brief), for plaintiff-appellant.

Millard S. Rubenstein, Asst. City Sol., Baltimore, Md., (Benjamin Brown, City Sol., on brief), for defendants-appellees.

Before MURNAGHAN, CHAPMAN and WILKINSON, Circuit Judges.

CHAPMAN, Circuit Judge:

This is an age discrimination action brought under 42 U.S.C. §§ 1983 and 1985

violated his right to equal protection under the Fourteenth Amendment in effectuating his transfer.

In a memorandum opinion dated October 22, 1986, the district court granted defendants' motion for summary judgment, stating that Zombro failed to assert a Fourteenth Amendment liberty or property interest as required to maintain an action under §§ 1983 and 1985. Particularly, the court stated that Zombro had no property interest in a specific post of duty or work location in the Department.

Zombro claims that age discrimination is a proper basis for an action under § 1983 and that he alleged sufficient facts to support such a cause of action. There is a factual dispute as to the reason for his transfer, and he asserts that he need not establish a liberty or property interest under the equal protection clause of the Fourteenth Amendment or under §§ 1983 or 1985.

## II.

### A.

Title 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

Section 1983 does not in itself create any substantive rights. Rather, it provides a statutory basis to receive a remedy for the deprivation of a right "secured by the Constitution and laws" of the United States by a person acting under color of state law. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

The Plaintiff's claims, of course, fall within the scope of the specific and comprehensive administrative remedies provided by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* (1982). Plaintiff Zombro, however, declined to bring this action under the ADEA.[1] Rather, he alleges that his employer's action was a violation of the equal protection guarantee or clause of the Fourteenth Amendment, and that this federal constitutional violation is a sufficient deprivation of rights to give rise to a § 1983 action.

The ADEA provides a comprehensive statutory scheme to prohibit discrimination in employment on the basis of age. The plan was structured to facilitate and encourage compliance through an informal process of conciliation and mediation. *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 841 (3rd Cir.1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed. 2d 770 (1978). A prerequisite to the bringing of a private action is that the Equal Employment Opportunity Commission (EEOC) must be given sixty days notice. 29 U.S.C. § 626(d). This period is designed to give the EEOC time to mediate the grievance "by informal methods of conciliation, conference, and persuasion." 29 U.S. C. § 626(b). The right to commence a private action, it should be noted, terminates upon the filing of an action by the EEOC. 29 U.S.C. § 626(c). Finally, notification to the EEOC must be given within 180 days after the alleged unlawful actions took place, unless the party is also seeking state relief. 29 U.S.C. § 626(d)(1).

If a violation of substantive rights under the ADEA could be asserted by way of a § 1983 action, the aggrieved party could avoid these specific provisions of the law. The plaintiff would have direct and immediate access to the federal courts, the comprehensive administrative process would be bypassed, and the goal of compliance through mediation would be discarded. The purposes and structure of the ADEA are inconsistent with the notion that the remedies it affords could be supplanted by alternative judicial relief. The inescapable conclusion to be drawn from the foregoing

---

1. The Plaintiff similarly declined to seek relief under the State of Maryland's anti-discrimination statutes. Md.Ann.Code art. 49B, § 1, *et seq.*

is that if 42 U.S.C. § 1983 is available to the ADEA litigant, the congressional scheme behind ADEA enforcement could easily be undermined, if not destroyed.[2] The very object of bypassing the specific administrative process of the ADEA, one thus assumes, was the principal reason why this action was not brought under the ADEA.

■■■ The overriding question presented by this case is whether the availability and detailed procedures of the ADEA foreclose a private action brought under § 1983 to enforce substantive rights specifically addressed and protected by the ADEA. May the Plaintiff, in other words, cavalierly bypass the comprehensive process fashioned by Congress in the ADEA by merely asserting a violation of a constitutional right rather than the statutory right?

Section 1983, standing alone, cannot withstand preemption by a more comprehensive statutory remedy designed to redress specific unlawful actions, such as those alleged by Zombro, unless the statute in question manifests a congressional intent to allow an individual a choice of pursuing independently rights under both the statutory scheme and some other applicable federal statute. In *Middlesex County Sewerage Authority v. National Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court instructed that "when [the state] is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." *Id.* at 20, 101 S.Ct. at 2626, quoting *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 673 n. 2, 99 S.Ct. 1905, 1945 n. 2, 60 L.Ed.2d 508 (1979) (Stewart, J., dissenting).

The Supreme Court has suggested that a § 1983 action is foreclosed."where the governing statute provides an exclusive remedy for violation of its terms." *Pennhurst State School and Hospital v. Halderman*,

451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981), quoting *Maine v. Thiboutot*, 448 U.S. 1, 22 n. 11, 100 S.Ct. 2502, 2514 n. 11, 65 L.Ed.2d 555 (1980) (Powell, J., dissenting); *see also National Sea Clammers, supra* at 20–21, 101 S.Ct. at 2626–27; *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 375–78, 99 S.Ct. 2345, 2350–52, 60 L.Ed.2d 957 (1979).

In *Novotny* the Supreme Court ruled that a Title VII violation could not be asserted by way of 42 U.S.C. § 1985(3), the conspiracy counterpart of § 1983. To allow such an action, the Court reasoned, would eviscerate the comprehensive statutory scheme enacted by Congress in Title VII, including express time limitations, opportunity for conciliation, investigation by the EEOC, etc. *Id.* at 373–96, 99 S.Ct. at 2349–61.

*Novotny* was applied in *National Sea Clammers, supra*, to proscribe a private action under § 1983. The Supreme Court held that a § 1983 action was barred because Congress had created a detailed statutory enforcement scheme under the Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, and the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1401, *et seq.* The framework available under the ADEA is no less specific and comprehensive.

In the controversy *sub judice*, however, the Baltimore City Police Department is alleged to have violated for purposes of § 1983 not the ADEA, but the equal protection clause of the Fourteenth Amendment. The Plaintiff's decision to bring this employment discrimination case under the Fourteenth Amendment without even passing reference to the ADEA makes this an unusual case.

In *H.R. v. Hornbeck*, 524 F.Supp. 215 (D.Md.1981), the court turned down a § 1983 action predicated on a claim under the equal protection clause of the Fourteenth Amendment which was presented with other actions on the same matter

---

**2.** If we adopt Plaintiff's argument, a litigant may bypass any remedy Congress may provide and come directly into federal court under

§ 1983, because the section protects rights and privileges "secured by the Constitution and *laws*" of the United States.

brought under the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Education of All Handicapped Children Act of 1975, 20 U.S.C. § 1401, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 (based on Title VII). Relying on *Novotny*, the court rejected all the claims, including the Fourteenth Amendment claim, because the plaintiffs failed to exhaust the comprehensive administrative procedures provided in the various handicap discrimination statutes. "To assert as a constitutional claim the selfsame rights which Congress has endeavored to protect through specific statutory schemes [is prohibited] ... until the remedies provided by the administrative process have been exhausted." *Hornbeck, supra* at 222.

The Supreme Court has similarly demonstrated a disinclination to entertain § 1983 actions in which plaintiffs have bypassed a comprehensive statutory remedy in favor of a § 1983 claim predicated on an alleged constitutional violation. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the court turned down prisoners' attempts to disregard the specific remedy of the habeas corpus statute in favor of an action under § 1983 alleging violations of constitutional rights. In *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the court similarly held that the Education of the Handicapped Act, 20 U.S.C. § 1400, *et seq.*, spelled out the exclusive remedy for the plaintiffs, notwithstanding the fact that constitutional claims had been raised.

In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), a § 1981 action, the Supreme Court held that § 717 of the Civil Rights Act of 1964, as added by § 11 of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16 (1970 ed., Supp. IV), was the exclusive remedy for challenging racial discrimination in federal employment even though such discrimination "clearly violated ... the Constitution." *Id.* at 824-25, 96 S.Ct. at 1963-64.

In *Scruggs v. Campbell*, 630 F.2d 237 (4th Cir.1980), the parents of a handicapped child brought a federal action under 20 U.S.C. § 1415(e)(2) (Education of All Handi-capped Children Act), 29 U.S.C. § 794 (Rehabilitation Act) and 42 U.S.C. § 1983 while a state administrative proceeding was pending. The District Court dismissed the action and we affirmed stating at page 239:

> The district court correctly recognized that the federal action was premature because the Scruggs had not exhausted their administrative remedies under either the Education for All Handicapped Children Act or the Rehabilitation Act. *Myers v. Bethlehem [Shipbuilding] Corp.*, 303 U.S. 41, 50-52, 58 S.Ct. 459, 463-64, 82 L.Ed. 638 (1938). The Scruggs' allegation that their administrative remedies were futile is refuted by the final administrative decision in their favor. Moreover, the Scruggs' citation of 42 U.S.C. § 1983, which does not require exhaustion of administrative remedies, did not entitle them to prevail in their race to the courthouse.

*See also Turillo v. Tyson*, 535 F.Supp. 577 (D.R.I.1982) (Education for All Handi-capped Children Act's remedial devices found sufficiently comprehensive to infer congressional intent to withdraw § 1983 remedy).

These cases evince a prudential policy that where Congress has provided a comprehensive remedial framework, such as the ADEA, a plaintiff is not relieved of the obligation to follow that remedial procedure by claiming that state action violative of the statutory scheme also violates the Fourteenth Amendment (or some other constitutional right). A mere assertion that constitutional rights have been somehow infringed does not *ipso facto* defeat the coverage, application and exclusivity of a comprehensive statutory scheme specifically enacted by Congress to redress the alleged violation of rights.

This Court is not unaware that the case at bar can be distinguished from many of the cases cited above insofar as the § 1983 claim *sub judice* is predicated on an alleged constitutional violation only and does not rest in part or in whole on alleged violations of substantive rights under the ADEA or some other comprehensive statutory scheme. Nevertheless, the general

policy of precluding § 1983 suits, where Congress has enacted a comprehensive statute specifically designed to redress grievances alleged by the plaintiff, is as applicable in instances such as the case at bar as cases where a constitutional claim is attached to a statutory claim brought under § 1983. We hold that this policy should be followed unless the legislative history of the comprehensive statutory scheme in question manifests a congressional intent to allow an individual to pursue independently rights under both the comprehensive statutory scheme and other applicable state and federal statutes, such as 42 U.S.C. § 1983. We find no such intent in the language and history of the ADEA.

An examination of the Act reveals that it is a precisely drawn, detailed statute, similar to other statutory schemes which have been held to provide the exclusive judicial remedy for a stated abuse. The conclusion is irresistible that the ADEA provides the exclusive judicial remedy for claims of age discrimination. *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1340 (E.D.Pa.1976). A number of federal courts have similarly opined that substantive rights secured by the ADEA may not be used as the basis for a § 1983 suit. *See, e.g., Paterson v. Weinberger*, 644 F.2d 521, 524 (5th Cir.1981) (following the extension of the ADEA to federal employees, the ADEA became exclusive remedy for age discrimination in federal employment); *Ring v. Crisp County Hospital Authority*, 652 F.Supp. 477, 482 (M.D.Ga.1987) ("ADEA is the exclusive remedy for claims of age discrimination, whether those claims are founded on the Constitution or on rights created by the ADEA. It is the underlying conduct and not the rights asserted that determine the remedy."); *McCroan v. Bailey*, 543 F.Supp. 1201, 1209–10 (S.D.Ga.1982) (rights created by ADEA cannot be enforced through § 1983); *Morgan v. Humboldt County School District*, 623 F.Supp. 440, 443 (D.Nev.1985) (§ 1983 action preempted by ADEA where plaintiff's claim fails to allege facts showing a violation of some federally secured right other than those already protected by the ADEA); *Christie*

*v. Marston*, 451 F.Supp. 1142, 1145 (N.D. Ill.1978) ("Congress intended the ADEA to be the exclusive remedy for age discrimination in federal employment.")

The text and context of the ADEA itself confirm this conclusion: "The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof)...." 29 U.S.C. § 626(b). Section 216 is a part of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and it has been held that the statutory remedy of that section is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA. *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027 (N.D.Calif.1972).

The provisions of the ADEA, we thus conclude, evidence congressional intent to foreclose actions for age discrimination under § 1983. To allow such actions would only circumvent the obvious congressional mandate, as well as the detailed procedures of the Act. It is implausible that Congress would have intended to preserve the private cause of action under § 1983 for age discrimination when that cause of action would severely undermine, if not debilitate, the enforcement mechanism created by Congress under the ADEA. Congress, we believe, did not intend to permit plaintiffs to bypass the comprehensive statutory scheme clearly embodied in the language and legislative history of the ADEA merely because they are employed by an agency operating under color of state law.

In addition to congressional intent evident in the ADEA to foreclose age discrimination suits under § 1983, we also conclude that additional factors exist counselling hesitation before recognizing a § 1983 remedy in an age discrimination case. The laws of the State of Maryland and the City of Baltimore, as well as well-established public policy, recognize that government employers, especially police departments, must have wide discretion and control over the management of their personnel and internal operations. This is particularly true in a police department, a paramilitary depart-

ment, where internal discipline and public safety require that a police commissioner be afforded broad discretion and authority to assign and reassign members of the department to various posts.[3] In a case involving the dismissal of a probationary civil servant, the Supreme Court emphasized the "well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson v. Murray,* 415 U.S. 61, 83, 94 S.Ct. 937, 949, 39 L.Ed.2d 166 (1974). The governmental employer-employee relationship was a significant factor in *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974), which held a civil service employee had no due process right to a pre-termination evidentiary hearing. Justice Powell, in a concurring opinion, emphatically stated that the "Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." *Id.* at 168, 94 S.Ct. at 1651. We therefore conclude, in the light of the existence of comprehensive ADEA remedies, the employer-employee relationship in this case—involving police discipline, morale and public safety—is a special factor that counsels hesitation in recognizing a constitutional cause of action absent affirmative contrary indications from Congress. *See Purtill v. Harris,* 658 F.2d 134, 137–138 (3rd Cir.1981) (ADEA preempts judicial remedies based directly on the Constitution for claims of age discrimination in federal employment).

The court today declines to construct from the spacious contours of the equal protection clause a generalized federal right of action to encompass every conceivable grievance in the workplace. Congress conceived and enacted a precise statutory remedy, the ADEA, to redress the unlawful acts alleged by the Plaintiff. If we were to bypass the ADEA, as the Plaintiff seeks to do, we would transfer wholesale public employment relations into the federal courts without any concrete and specific expression of federal constitutional priority.

■ The source of Zombro's claim, as well as many other discrimination suits, is the equal protection clause of the Fourteenth Amendment. It is noteworthy that the Supreme Court has stated explicitly that the equal protection clause does not recognize a "class defined as the aged" to be a suspect class in need of special protection in which alleged discrimination is subject to "strict judicial scrutiny." *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976).[4] Citing *United States v. Carolene Products Co.,* 304 U.S. 144, 152–153 n. 4, 58 S.Ct. 778, 783–784 n. 4, 82 L.Ed. 1234 (1938), the *Murgia* Court stated that "old age does not define a 'discrete and insular' group … in need of 'extraordinary protection from the majoritarian political process.'" 427 U.S. at 313, 96 S.Ct. at 2566.

This Court, following the instructions of the Supreme Court, has readily acknowledged the validity of § 1983 actions predicated on race, sex, or religious discrimination or an infringement of specific First Amendment rights.[5] Apart from impermis-

---

3. The Code of Public Local Laws of Baltimore City, enacted pursuant to Art. 23A, § 2 of the Code of Maryland, vests the police commissioner with broad discretionary powers to administer and control the affairs of the department. Among the specific powers and duties granted to the police commissioner is the authority

> To assign, reassign, allocate and reallocate members of the Department to those duties, and to those organizational subdivisions of the Department as the Commissioner in his judgment may deem necessary to best serve the interests of the public and the Department.

Public Local Laws of Baltimore City, § 16–7(4).

4. Unlike the equal protection claim in *Murgia* which was an equitable action challenging the constitutionality of a compulsory retirement statute, the case at bar only addresses an allegedly age-based disparate treatment challenge to a particular personnel decision. We do not hold that a *Murgia*-type challenge to mandatory retirement statutes is foreclosed by the ADEA.

5. This Court held in *Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987), that Title VII, even though it has a comprehensive enforcement apparatus, does not preclude a public sector employee from bringing a § 1983 action based on alleged violations of the equal protection clause. Although the minority opinion em-

sible race or sex discrimination or First Amendment violations, we have declined to intervene in the multitude of personnel and management decisions made daily in public agencies.

In *Clark v. Whiting,* 607 F.2d 634 (4th Cir.1979), this Court addressed constitutional claims of denial of equal protection and due process brought under § 1983. In *Clark* a university professor challenged denial of tenure. The court determined that it lacked jurisdiction over the case. We reasoned:

> Federal courts thus have never been hesitant to intervene on constitutional grounds in the hiring, discharge or promotion of public employees, including academic personnel, where the asserted claim is that the action taken was tainted by racial or sex discrimination or was intended to penalize for the exercise of First Amendment rights. But, absent such impermissible sex or racial discriminations or First Amendment restraints—clear violations of positive express constitutional or statutory mandate—"[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."

607 F.2d at 638–39 (footnote omitted).

> Courts are not qualified to review and substitute their judgment for these subjective, discretionary judgments of professional experts on faculty promotions or to engage independently in an intelligent informal comparison of the scholarly contributions or teaching talents of one faculty member denied promotion with those of another faculty member granted a promotion; in short, courts may not engage in "second-guessing" the University authorities in connection with faculty promotions.

*Id.* at 640.

We find Zombro's claim as asserted under the Fourteenth Amendment, based upon alleged discriminatory transfer, is not justiciable. There is no claim of denial of equal protection based upon race or sex or discrimination based upon the exercise of protected First Amendment rights. Admittedly, the ADEA may constitute "positive express statutory mandate" under *Clark.* In his complaint, however, Zombro has made no claim under the ADEA.

### B.

■ Zombro's claim under 42 U.S.C. § 1985 alleges that the Police Commissioner conspired with the police department to deny him equal protection because of his age. Section 1985(3) requires a conspiracy "of two or more persons." Zombro has not alleged such a conspiracy. The Department is not a person. The Police Commissioner as head of the Department cannot be held to have entered into a conspiracy with the Department. *Buschi v. Kirven,* 775 F.2d 1240, 1251–53 (4th Cir.1985). A department may not conspire with itself. The claim under 42 U.S.C. § 1985 must be dismissed because it does not allege facts upon which relief can be granted. Fed.R. Civ.P. 12(b)(6).

phasizes the parallels between Title VII and the ADEA, *Keller* is unlike the case at bar in that the legislative history of Title VII reveals that Congress did not intend the comprehensive statutory scheme of Title VII to operate to the exclusion of Fourteenth Amendment claims of racial discrimination brought by public sector employees. We find no comparable evidence of congressional intent to support § 1983 equal protection challenges in the area of age discrimination concurrent with the comprehensive remedial framework of the ADEA.

For the reasons stated herein, the judgment of the district court is

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Zombro has failed to state a legally sufficient claim under 42 U.S.C. § 1985. However, the majority has thwarted congressional intent in declaring that the Age Discrimination in Employment Act ("ADEA")[1] precludes Zombro's use of 42 U.S.C. § 1983 to assert an equal protection claim for alleged age discrimination. Zombro's § 1983 claim remains viable. I would reverse the grant of summary judgment on the § 1983 claim and remand the case for further proceedings.

## I.

The majority has overstepped its bounds by substituting its judgment for that of Congress on the question of whether enactment of the ADEA repealed § 1983 remedies for alleged equal protection violations arising out of age discrimination in government employment. It is for Congress, not this Court, to decide whether to repeal the statutory remedies created for plaintiffs to seek redress for constitutional violations. The majority, however, has ignored its proper role and has assumed for itself the power to nullify § 1983 remedies previously available to government employees. The majority has acted without any evidence whatsoever that Congress intended ADEA to foreclose equal protection claims under § 1983 and despite several indications that lawmakers in fact wished to preserve the § 1983 remedy for constitutional claims in age discrimination cases.

## A.

To decide whether the enactment of the ADEA foreclosed Zombro's age discrimination claim under § 1983, we must focus on what Congress intended. *See Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct.

3457, 3468–69, 82 L.Ed.2d 746 (1984). The majority argues that ADEA's comprehensive enforcement mechanism demonstrates Congress' intent to preempt use of § 1983 to redress equal protection violations arising from age discrimination in public employment. That reasoning is flawed because it blurs the crucial distinctions between two very different types of § 1983 claims in age discrimination cases.

The existence of a comprehensive remedial scheme in the ADEA would preclude Zombro's suit only if he were basing his § 1983 action on the substantive rights created by the ADEA itself. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) (§ 1983 remedy foreclosed because plaintiffs based claim on rights created under two federal statutes, both of which contained "quite comprehensive enforcement mechanisms"). Zombro, however, bases his § 1983 action on rights created by the Equal Protection Clause of the Fourteenth Amendment, not the ADEA. When Congress enacts a law creating substantive rights and in that statute prescribes a detailed and comprehensive enforcement scheme, it is reasonable to presume, absent specific evidence to the contrary, that Congress intended that mechanism to be the exclusive method for remedying violations of rights created by that statute. *See id.; McCroan v. Bailey*, 543 F.Supp. 1201, 1209–10 (S.D.Ga.1982) (rights created by ADEA may not be enforced in § 1983 action); *Day v. Wayne County Board of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) (§ 1983 cannot be used to enforce Title VII, because Title VII has its own enforcement mechanism). *See also Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2351–52, 60 L.Ed.2d 957 (1979) (violation of Title VII cannot be asserted in § 1985(3) action). However, the mere existence of ADEA's comprehensive statutory remedy tells us nothing about whether Congress intended to retain or to repeal the § 1983 cause of action for enforcement of

---

**1.** 29 U.S.C. § 621 *et seq.*

rights that existed prior to *and independently* of the ADEA.

The majority adopts a presumption that congressional enactment of a statute containing a comprehensive enforcement mechanism will result in repeal of all existing remedies for violations of rights that are similar to, yet independent of, those created by the statute. Such a presumption runs counter to the Supreme Court's strong policy against repeals of legislation by implication. "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). Here, the ADEA and a § 1983 equal protection claim are hardly irreconcilable. They merely represent complementary methods of fighting age discrimination. We must presume, unless there is specific evidence to the contrary, that Congress intended to allow state and local government employees to challenge alleged age discrimination on equal protection grounds under § 1983, as well as under the ADEA.

The majority tries to bolster its contrary conclusion by relying on two cases in which the Supreme Court held that the existence of a comprehensive statutory enforcement mechanism precluded a § 1983 action based on alleged constitutional violations. Neither case conflicts with the view that the ADEA does not foreclose Zombro's § 1983 claim. Both Supreme Court decisions involved statutory schemes specifically designed by Congress to provide methods for enforcing constitutional rights violations. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Court held that state prisoners could not assert their constitutional claims through § 1983 because Congress had enacted the federal *habeas corpus* statute, 28 U.S.C. § 2254,[2] which provided a more specific mechanism for prisoners to challenge their custody on constitutional grounds. *Id.* at 489–90, 93 S.Ct. at 1835–1837. In another decision on which the majority relies, the Supreme Court held that the Education of the Handicapped Act ("EHA")[3] precluded the plaintiff from using § 1983 to "assert an equal protection claim to a publicly financed special education." *Smith v. Robinson*, 468 U.S. 992, 1009, 104 S.Ct. 3457, 3466–3467, 82 L.Ed.2d 746 (1984) (holding superseded by 20 U.S.C. § 1415(f)).[4] The language of the EHA and its legislative history convinced the Court that Congress intended the statute to provide, *inter alia*, a detailed mechanism for handicapped children to assert their constitutional claims. *Id.* at 1009–10, 1016, 104 S.Ct. at 3466–67, 3470.[5] In contrast to the statutes at issue in *Preiser* and in *Smith*, the ADEA does not purport to provide a remedy for violation of constitutional rights. Instead, it provides a mechanism to enforce only the substantive rights created by the ADEA itself. Thus, the comprehensiveness of the remedy prescribed in the ADEA, since it does not extend to constitutional claims, does not rebut the presumption that Congress in-

---

**2.** Section 2254 provides in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution* or laws or treaties of the United States. (Emphasis added).

**3.** 20 U.S.C. § 1400, *et seq.*

**4.** It remains to be seen whether the Supreme Court will modify its analysis on preemption of § 1983 remedies in light of Congress' overruling of *Smith's* major holding. Despite the uncertainty, I will assume here that the Supreme Court would continue to follow the same analytical approach.

**5.** *See also* S.Rep. No. 168, 94th Cong., 1st Sess. 13, *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1437 ("It is the intent of the Committee to establish and protect the right to education for all handicapped children and to provide assistance to the States in carrying out their *responsibilities under* State law and *the Constitution of the United States to provide equal protection of the laws.*") (emphasis added); 20 U.S.C. § 1400(b)(9) ("it is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of handicapped children in order to assure *equal protection of the law.*") (emphasis added).

tended to retain § 1983 in age discrimination cases as a method of enforcing substantive rights arising from sources other than the ADEA.[6]

### B.

The presumption against preemption can, of course, be rebutted by specific evidence that Congress intended to foreclose use of § 1983 to bring equal protection claims for alleged age discrimination in the workplace. However, neither the statutory language itself nor the extensive body of legislative history evinces any intent by Congress to eliminate remedies for age discrimination that existed prior to the enactment of the ADEA. In fact, the legislative history suggests precisely the opposite.

In the course of enacting the 1978 amendments to the statute,[7] Congress demonstrated its understanding that the ADEA did not preclude age discrimination plaintiffs from bringing federal equal protection claims. Specifically, members of Congress acknowledged that some government employees had challenged mandatory retirement rules on equal protection grounds, as well as under the ADEA, and had succeeded on rare occasions in having the rules declared unconstitutional. *See* House Select Committee on Aging, *Mandatory Retirement: The Social and Human Cost of Enforced Idleness*, 95th Cong., 1st Sess. 15–17, 38 [hereinafter "Committee on Aging Report"], *reprinted in* EEOC, Legislative History of the Age Discrimination in Employment Act 324–26, 347 (1981) [hereinafter "Legislative History"];[8] 123 Cong. Rec. 34,306–07 (1977), *reprinted in* Legislative History, at 493–94 ("A Federal court held recently that equal-protection guarantees preclude the singling out of certain employees for early retirement when most others in similar circumstances were allowed to continue") (excerpt from newspaper column inserted by Senator Church into record during floor debate). Despite knowing that some government employees,

---

6. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), another case cited by the majority, is inapposite to the issue to be decided here because Zombro is not a federal employee. *Brown* held that § 717 of the Civil Rights Act of 1964 provided the exclusive means of challenging racial discrimination in *federal* employment. 425 U.S. at 835, 96 S.Ct. at 1969. However, as we have emphasized before, *Brown's* holding was based on legislative history showing that Congress believed, albeit mistakenly, that prior to extension of Title VII to government workers, "federal employees had no judicial remedy for intentional acts of employment discrimination." *Keller v. Prince George's County,* 827 F.2d 952, 956 (4th Cir.1987), *citing Brown,* 425 U.S. at 828, 96 S.Ct. at 1965–66. However, "Congress was aware of the remedies for *state employees* such as § 1983 which preexisted Title VII." *Keller,* 827 F.2d at 962 (emphasis added). Thus, we held in *Keller* that state and local government employees could assert race discrimination claims under § 1983, notwithstanding the holding of *Brown.* As discussed in the text below, Congress' intent with respect to Title VII remedies for state and local government workers provides significant aid in interpreting the similar provisions of the ADEA.

7. The 1978 amendments raised the protected age category to 70 and prohibited mandatory retirement of certain employees. *See* S.Rep. No. 493, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504.

8. The Committee on Aging Report recognized that plaintiffs would continue to challenge age discrimination in governmental employment on equal protection grounds:

> A number of witnesses before the committee contended that mandatory retirement based solely on age is unconstitutional because it violates the "due process" and "equal protection" clauses of the 5th and 14th Amendments to the Constitution. Proponents of this position were encouraged by two almost simultaneous decisions in 1974 which were seen as favorable to their position.

Committee on Aging Report, at 15, *reprinted in* Legislative History, at 324. Among the court decisions discussed in the Report is *Bradley v. Vance,* 436 F.Supp. 134 (D.D.C.1977), which had struck down mandatory retirement rules on equal protection grounds. Following passage of the 1978 amendments to the ADEA, the Supreme Court reversed *Bradley,* holding that the mandatory retirement rules complied with the Fifth Amendment's equal protection requirements. 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

For further legislative discussion of equal protection challenges to age discrimination in government employment, *see* M. Rosenblum, *The Next Steps in Combating Age Discrimination in Employment: With Special Reference to Mandatory Retirement Policy,* Working Paper of the Senate Special Committee on Aging, 95th Cong., 1st Sess. 8–11 (Comm. Print 1977), *reprinted in* Legislative History, at 288–91.

whom the ADEA had protected since 1974, were framing their age discrimination actions as equal protection claims, Congress expressed no disapproval of the practice or suggested in any way that it intended ADEA to foreclose such constitutional challenges. In fact, one committee report indicates that some members of Congress expected such constitutional challenges to continue in the future, although they realized the chance of success was slim in light of the Supreme Court's per curiam opinion in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), which upheld a mandatory retirement law against an equal protection challenge. *See* Committee on Aging Report, at 38, *reprinted in* Legislative History, at 347.[9]

Had Congress wished to foreclose access to remedies other than ADEA to fight age discrimination, it certainly could have done so in the 1978 amendments, or at least could have expressed its desire to do so in the various floor debates and committee reports. But Congress did not. I must infer from Congress' inaction that it intended that age discrimination plaintiffs would continue to have § 1983 available to seek redress for alleged equal protection violations.

Title VII of the Civil Rights Act of 1964,[10] the statute on which the ADEA was closely patterned, also provides useful insight into whether Congress intended ADEA to foreclose all § 1983 actions for age discrimination. *See Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071–72, 60 L.Ed.2d 609 (1979) (relying on Title VII to interpret ADEA); *Kelly v. Wauconda Park Dist.,* 801 F.2d 269, 271–72 (7th Cir.1986) (same), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Although it is generally established that § 1983 cannot be used to enforce rights created by Title VII itself, *see,*

*e.g., Day,* 749 F.2d at 1204, the Fourth Circuit has concluded that Title VII, even though it has a comprehensive enforcement mechanism, does not preclude a public sector employee from bringing a § 1983 action based on alleged violations of the Fourteenth Amendment's Equal Protection Clause. *Keller v. Prince George's County,* 827 F.2d 952, 953, 958–63 (4th Cir.1987) (plaintiff sought redress for racial discrimination under both § 1983 and Title VII). The legislative history of Title VII's 1972 amendments, which extended coverage to government employees, made clear Congress' intent that Title VII not foreclose equal protection claims under § 1983 based on racial, sexual or other types of discrimination covered by the statute. *Id.* at 958–62.

The legislative history of the 1972 Title VII amendments is particularly helpful in deciphering congressional intent in amending ADEA in 1974 to extend coverage to government workers. *Kelly,* 801 F.2d at 271. Senator Bentsen first sponsored that amendment to the ADEA in 1972 at the same time Congress was considering extension of Title VII to government employees. *Id.; EEOC v. Elrod,* 674 F.2d 601, 607 (7th Cir.1982). At that time, Senator Bentsen stated on the floor of the Senate: "I believe that the principles underlying these provisions in the EEOC bill [extending Title VII protection to government workers] are directly applicable to the Age Discrimination in Employment Act." 118 Cong.Rec. 15,895 (1972), *reprinted in* Legislative History, at 208. The Supreme Court and other circuits have relied upon Senator Bentsen's 1972 comments on his proposed ADEA amendments as evidence of congressional intent in enacting those amendments two years later. *See Lehman v. Nakshian,* 453 U.S. 156, 166–67 nn. 14, 15, 101 S.Ct. 2698, 2704–05 nn. 14, 15, 69 L.Ed.2d 548 (1981);

---

**9.** The Report states:
Many believe that the Court's ruling in the *Murgia* case does not close the door completely to successful constitutional attacks on mandatory retirement in the courts—as demonstrated by the recent decision in *Bradley v. Vance* [436 F.Supp. 134 (D.D.C.1977), *rev'd*

440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) ]—but they also agree that the likelihood of success is very bleak.
Committee on Aging Report at 38, *reprinted in* Legislative History at 347.

**10.** 42 U.S.C. § 2000e *et seq.*

*Kelly,* 801 F.2d at 271; *Elrod,* 674 F.2d at 607.

The legislative history convinces me that, in extending ADEA's protections to government employees in 1974, Congress intended to follow the approach taken two years earlier in amending Title VII. That is, Congress intended to provide new statutory protections to government workers, while allowing them to retain their rights of action under § 1983 for alleged equal protection violations arising from discrimination in the workplace. *See Keller,* 827 F.2d at 958–62 (citing legislative history that explicitly demonstrates Congress' intent that Title VII not foreclose state and local governmental workers' rights to seek redress for discrimination under 42 U.S.C. §§ 1981, 1983).

The majority argues that Congress could not have intended to preserve § 1983 as a remedy for age discrimination because such a cause of action "would severely undermine, if not debilitate, the enforcement mechanism created by Congress under the ADEA." I find the majority's reasoning unpersuasive. It is up to Congress, not this Court, to balance the risks and benefits inherent in allowing alternative remedies to co-exist in the fight against discrimination. In the context of Title VII, Congress clearly believed that the need to retain a variety of methods to combat discrimination outweighed the risk that multiple remedies would undermine Title VII's comprehensive enforcement mechanism. *Keller,* 827 F.2d at 959–61. Nothing indicates that Congress intended to strike a different balance in enacting the ADEA.

Contrary to the majority's dire predictions, preserving the § 1983 remedy for equal protection violations in age discrimination cases will not "severely undermine" nor "debilitate" the ADEA's enforcement mechanism. In fact, any effect that the availability of the § 1983 remedy might have on ADEA would be minuscule compared to the impact that allowing such a remedy would have on Title VII's comprehensive enforcement scheme. Government employees who are victimized by the types of discrimination covered by Title VII have a far greater incentive than age discrimination victims to bring their claims under the equal protection clause. That is because the types of discrimination covered by Title VII are subject to much closer scrutiny than age discrimination claims when challenged on equal protection grounds. Whereas race-based classifications are subject to strict scrutiny under the Equal Protection Clause and gender-based classifications are reviewed under intermediate-level scrutiny,[11] the Supreme Court applies the far more deferential rational-basis scrutiny in equal protection challenges to age discrimination. *See Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (upholding mandatory retirement rules against equal protection challenge); *Murgia,* 427 U.S. 307, 96 S.Ct. 2562 (same). Under rational basis scrutiny plaintiffs rarely prevail. But they may still bring suit.[12] Thus, the vast majority of government workers who assert age discrimination claims will choose to rely on ADEA and its prescribed enforcement mechanism.[13] They simply have a much better chance of winning if they sue under the ADEA. Wholesale bypassing of the statute hence is altogether unlikely to occur.

Since Congress was willing to take the risk that government employees might bypass Title VII's statutory enforcement mechanism in the areas of sex and race discrimination, *see Keller,* 827 F.2d at 961, it seems reasonable that Congress intended to tolerate the much smaller risk that age discrimination plaintiffs might forego the ADEA remedies in favor of a constitutional challenge under § 1983. I conclude that

---

**11.** *See, e.g., Mississippi University for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3335–36, 73 L.Ed.2d 1090 (1982); *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976).

**12.** That Zombro's likelihood of success may be bleak is wrongly relied on by the majority to

eliminate his claim *as a matter of law,* altogether.

**13.** It is unclear from the record why Zombro did not choose ADEA as the means for asserting his claim.

Congress intended to allow state and local government employees, such as Zombro, who are subject to alleged age discrimination in the workplace, to retain the option of bringing an equal protection claim under § 1983, as well as a claim under the ADEA.

### C.

The result I reach is consistent with previous decisions of the Supreme Court and this Circuit.[14] Although neither court has directly addressed the issue of whether the ADEA forecloses an action for an alleged equal protection violation, both have assumed that such a constitutional claim remains available. *See Bradley*, 440 U.S. at 94, 95 n. 2, 99 S.Ct. at 940–41 n. 2 (analyzing plaintiff's claim under equal protection component of Fifth Amendment, even though plaintiff had previously asserted a claim, based on same facts, under the ADEA); *Johnson v. Mayor & City Council of Baltimore*, 731 F.2d 209, 210–11 (4th Cir.1984) (in suit alleging age discrimination, court considered both an equal protection claim under § 1983 and a claim based on the ADEA), *rev'd on other grounds*, 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985); *Arritt v. Grisell*, 567 F.2d 1267, 1269–72 (4th Cir.1977) (same). *See also, Alford v. Lubbock*, 664 F.2d 1263, 1266–71 (5th Cir. Unit A 1982) (same), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982). The courts in those cases expressed no concern about the propriety of bringing a § 1983 action in an age discrimination case. My proposed disposition of the case merely makes explicit the correctness of the assumption on which the Supreme Court and our own Circuit have operated under for several years.

In sum, the legislative history and prior decisions of the Supreme Court and our Circuit support the conclusion that Zomb-ro's § 1983 claim for alleged equal protection violations remains viable despite the existence of the ADEA.

### II.

The majority is not content merely to hold that the ADEA precludes Zombro's § 1983 claim. Unfortunately, the majority compounds its mistake by adding to its opinion dictum that grossly misstates equal protection law. The majority opinion appears to assert that even if Zombro's suit were not preempted by the ADEA, his Fourteenth Amendment claim under § 1983 would not be justiciable because he has not alleged discrimination based on race or sex or exercise of protected First Amendment rights. Under the majority's strange view of the law, government employees apparently could never raise equal protection challenges to age discrimination in the workplace, even if the ADEA did not exist. Although that view is mere dictum and thus has no precedential value, I feel compelled to respond because I fear the majority's unnecessary and misleading comments could produce confusion which will come back to haunt us in future cases.

The majority's position flies in the face of several decisions of the Supreme Court and our own Circuit. As I noted earlier, the Supreme Court at least twice has allowed litigants to challenge age discrimination on equal protection grounds. *See Bradley*, 440 U.S. 93, 99 S.Ct. 939 (challenging mandatory retirement law under equal protection component of Fifth Amendment); *Murgia*, 427 U.S. 307, 96 S.Ct. 2562 (challenging mandatory retirement under Equal Protection Clause of Fourteenth Amendment). We also have allowed such challenges. *See Johnson*, 731 F.2d 209 (equal protection challenge to

---

**14.** The majority suggests that *Scruggs v. Campbell*, 630 F.2d 237 (4th Cir.1980), compels a different result. *Scruggs*, however, does not conflict with my conclusion that the ADEA does not foreclose Zombro's § 1983 claim. *Scruggs* involved statutes other than the ADEA. Whatever Congress may have intended in enacting those statutes, I have illustrated that Congress demonstrated no intent to foreclose § 1983 actions based on equal protection violations when it enacted the ADEA. Furthermore, it is unclear whether the plaintiffs in *Scruggs* based their § 1983 action on the rights created by the statutes containing the comprehensive enforcement mechanisms, or instead, on constitutional or other rights arising independently of those statutes. As I have explained, that distinction is crucial in deciding whether a statute forecloses an action under § 1983.

mandatory retirement rule); *Arritt,* 567 F.2d 1267 (same).

Our decision in *Clark v. Whiting,* 607 F.2d 634 (4th Cir.1979), provides no support for the majority's position that Fourteenth Amendment claims are non-justiciable if based on alleged age discrimination in government employment. The majority conveniently ignores the fact that *Clark* expressly recognized that courts will entertain some equal protection claims from public employees even though neither race nor sex discrimination is alleged. To make that point clear, we inserted the following footnote in *Clark:* "Of course, if the rule on its face discriminated against out-of-staters or non-graduates, a justiciable equal protection claim might be presented." 607 F.2d at 641 n. 13. *Clark* merely used sexual and racial discrimination as examples of violations of "positive constitutional requirement[s]" that must be alleged to raise a justiciable equal protection claim. *See id.* at 638. Zombro has alleged such a constitutional violation. He has asserted a claim based on age discrimination, a claim that the Supreme Court and our own Circuit have been willing to examine under the Equal Protection Clause.

The majority also attempts to derive support for its non-justiciability argument by emphasizing that Zombro has brought his claim against "a police department, a paramilitary department, where internal discipline and public safety require that a police commissioner be afforded broad discretion and authority to assign and reassign members of the department to various posts." That fact in no way makes Zombro's constitutional claim non-justiciable, as the Supreme Court has illustrated.[15] In *Murgia,* the Supreme Court allowed a Massachusetts state police officer to assert an equal protection claim based on age discrimination. 427 U.S. 307, 96 S.Ct. 2562. Three years later, the Court allowed foreign service officers, who performed hazardous

duty and who occupied "positions critical to the conduct of our foreign relations in the post-war world," to raise an age discrimination claim under the equal protection component of the Fifth Amendment's Due Process Clause. *Bradley,* 440 U.S. at 97, 101, 99 S.Ct. at 942, 944.[16] The plaintiffs in both cases occupied positions at least as hazardous and sensitive as that of a Baltimore City police officer, and yet the Supreme Court did not consider their equal protection claims non-justiciable.

Of course, the sensitive and dangerous nature of law enforcement may make it difficult for Zombro to succeed on the merits of his equal protection claim. The plaintiffs in both *Murgia* and *Bradley* ultimately failed in their constitutional challenges, at least in part because the special nature of law enforcement and the Foreign Service made it particularly difficult for the plaintiffs to show that age was not rationally related to the government's interests. *See Bradley,* 440 U.S. at 101–09, 99 S.Ct. at 944–48; *Murgia,* 427 U.S. at 314–17, 96 S.Ct. at 2567–69. However, the likelihood that a plaintiff will ultimately lose an equal protection challenge does not make his or her claim non-justiciable.

Here, Zombro would bear a heavy burden in his equal protection challenge even if he were to prove that the police department transferred him because of his age:

> "[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). In a case such as this, the plaintiff can carry this burden by submitting evidence to show that the asserted grounds for the legislative classification lack any reasonable support in fact, but this burden is nonetheless a considerable one.

---

**15.** The question here is not who should win, but whether the court should entertain the suit.

**16.** We also have allowed government workers whose duties implicate public safety to challenge age discrimination on equal protection

grounds. *See Johnson,* 731 F.2d 209 (firefighters); *Arritt,* 567 F.2d 1267 (police officers). Although we considered the equal protection challenges, we ultimately found no constitutional violations in those two cases.

*New York State Club Ass'n v. New York,* ——— U.S. ———, ———, 108 S.Ct. 2225, 2236, 101 L.Ed.2d 1 (1988) (citation omitted). Although a successful equal protection challenge to age discrimination may be unlikely, it is not impossible. *See, e.g., McMahon v. Barclay,* 510 F.Supp. 1114, 1117 (S.D.N.Y.1981) (invalidating, under rational-basis test, New York Civil Service Law provision prohibiting employment of persons over age 29 as police officers).

We should remand Zombro's § 1983 claim to the district court for further proceedings. We do not have before us the asserted grounds on which the Baltimore police department apparently based its alleged practice of transferring older officers away from the Inner Harbor. In fact, the police department denies that it has such a practice and asserts that Zombro was transferred for reasons other than age. Thus, we are unable to conduct the necessary rational-basis scrutiny on the record before us. On remand, Zombro might not succeed on his claim, but he should be given the chance to try.